OPINION OF THE COURT
Helen E. Freedman, J.
These motions and cross motion seeking declaratory relief[1] in four asbestos-related personal injury and wrongful death lawsuits[2] raise a critical issue about judgment molding[3] that affects not only these four actions, but the tens of thousands of *216 cases now pending before me in the New York City Asbestos Litigation (NYCAL).[3]
[4] The question is whether, under article 16 of the CPLR, a solvent tortfeasor in a personal injury or wrongful death lawsuit whose percentage of fault is less than 50% must absorb the liability for noneconomic losses of a tortfeasor that has filed for bankruptcy.
Statutory Framework
Article 16, enacted in 1986, partially abrogates New York’s common law, under which any joint tortfeasor, whatever its share of fault, could be held jointly and severally liable for the entire judgment. (Rangolan v County of Nassau, 96 NY2d 42, 46 [2001].) The statute, CPLR 1601 (1), limits a joint tortfea-sor’s liability for the plaintiffs noneconomic losses to its proportionate share, provided that the tortfeasor is found 50% or less at fault. If a defendant is found more than 50% culpable, however, it cannot benefit from the statute and remains liable as a joint and several tortfeasor.[5]
*217 The first proviso in CPLR 1601 (l)[6] states that, if a plaintiff in an action can prove that it could not with due diligence obtain jurisdiction over a tortfeasor and join it as a defendant, then that nonparty tortfeasor’s share of fault will not be considered when calculating the party defendants’ percentages of fault under article 16.[7]
Issue and Contentions
The issue here is whether, under the CPLR 1601 (1) proviso, a plaintiff is “unable to obtain jurisdiction” over a tortfeasor simply because it has filed for bankruptcy, triggering the automatic stay of prosecution under 11 USC § 362 (a). Defendants contend that, as a matter of law, a bankruptcy filing by a tortfeasor does not divest a plaintiff of jurisdiction that it might otherwise obtain over the bankrupt, and accordingly the bankrupt’s share of fault should be included when calculating the defendants’ exposure under article 16. Plaintiffs argue that, because the automatic stay afforded by a bankruptcy filing precludes a plaintiff from obtaining “effective jurisdiction” over the bankrupt tortfeasor, the bankrupt tortfeasor’s shares should be excluded from the calculation, which will cause the culpable defendants’ shares of liability to increase. If the adjustment causes a defendant’s liability to rise to above 50% *218 the severally liable defendant would become jointly liable for the plaintiffs entire noneconomic loss.[8]
Effect on Asbestos Litigation
This issue is relevant to any personal injury action with more than one tortfeasor, in which a bankrupt entity has been assigned liability. But its impact on asbestos litigation is especially pronounced, because of the large number of potentially culpable parties that have filed for bankruptcy. Most of these companies claim to have been driven into bankruptcy by the “elephantine mass of asbestos cases”[9] in state and federal courts throughout the country.[10]
Since 1982, at least 62 companies that mined asbestos, or manufactured or used asbestos-containing products have filed for bankruptcy.[11] The bankruptcy rate is accelerating: The first three companies filed in 1982, followed by 13 more in the rest of the 1980’s. In the 1990’s, there were 18 filings. And since *219 January 1, 2000, in a period of less than three years, 26 companies filed pursuant to chapter 11. (Carroll et al., Asbestos Litigation Costs and Compensation, at 71.)
There are noteworthy differences between the bankrupt defendants and those that are still solvent. As a group, the bankrupt corporations can be characterized as “traditional” asbestos defendants: they either mined asbestos, or manufactured, sold, distributed or required asbestos-containing products, including insulation, fireproofing, construction materials, and boilers. Until recently, these “traditional” defendants were the plaintiffs’ primary targets.
Many of the remaining defendants are “downstream” users or distributors of asbestos-containing products, or manufacturers of products in which asbestos was jacketed or encapsulated.[12] These defendants include premises owners, heavy and light equipment manufacturers (whose products incorporated some asbestos), brake, gasket, and sealant manufacturers, and general construction contractors. For example, moving defendant American Standard, Inc. manufactured boilers for use in buildings that required asbestos insulation or contained jacketed asbestos, joint movants Ford Motor Co., Inc., Daimler Chrysler Corp., and General Motors Corp. made and sold vehicle brakes, moving defendant Treadwell Corp. was a general construction contractor, and amicus curiae Congoleum Corporation manufactured floor tiles.
In asbestos litigation, the bankrupt tortfeasors’ shares of liability, which the plaintiffs claim that the solvent defendants must absorb, can comprise much or most of a large verdict. For example: In August 1993, multimillion dollar verdicts were returned in four consolidated cases, in which the plaintiffs were exposed to asbestos-containing pipe covering, cement, spray and tile in the 1940’s and 1950’s. Fault percentages were apportioned among the tortfeasors. If the four cases were decided today, the percentages attributable to now-bankrupt defendants would be 45% (of noneconomic damages of $11.3 million), 67% (of $14 million), 74% (of $4.4 million), and 74% (of $8.2 million). (See In re New York Asbestos Litig., 847 F Supp 1086, 1116, 1118, 1120, 1124-1125, 1128, 1131, 1134, 1137 [SD NY 1994].)
*220 Nature of Relief Sought
Before the merits are reached, two threshold matters need to be addressed. First, the nature of the relief sought here must be clarified. By these motions and cross motions, the parties raise only a question of law. They ask. this court to construe article 16, because they want to establish the extent to which the solvent defendants may be liable to the plaintiffs before verdicts are rendered. In other words, the parties seek an advance declaratory judgment interpreting the statute. (See Matter of Morgenthau v Erlbaum, 59 NY2d 143, 150 [1983] [noting that declaratory judgment is “an appropriate vehicle” for statutory construction].)
But the parties do not assert any claims for declaratory relief in their affirmative pleadings; they only seek coercive relief. However, they plead general allegations and defenses about how article 16 applies to the cases, pursuant to CPLR 1603: the complaints include allegations that defendants are jointly and severally liable because article 16 exemptions apply, and the answers include defenses denying that exemptions apply and alleging that the defendants may take advantage of the limited liability rule.
Under these circumstances, pursuant to CPLR 103 (c) any defects of form in the pleadings will be disregarded, and the parties are deemed to seek declaratory as well as coercive relief. This will not prejudice the parties, who have proceeded as if the actions sought declaratory relief, and who fully briefed the issues at hand. Moreover, all the parties to the NYCAL were given full opportunity to appear on behalf of these motions. (See supra n 4.)
Accordingly, the pleadings are deemed amended so as to set forth the claims for declaratory relief that are addressed here.
Ripeness
The second threshold issue is whether these motions are premature. Plaintiffs contend that they are not ripe for determination because a verdict has not been rendered in any of the four cases. Until both the movants and nonparty bankrupts are found liable for a plaintiff’s noneconomic injuries, according to plaintiffs, the issue raised in these motions will not affect the parties. Plaintiffs also note that a declaration that bankrupt tortfeasors’ shares are to be included when calculating a plaintiff’s liability under article 16 would not affect what a plaintiff could recover from a moving defendant if (a) the defendant has been found more than 50% culpable, and thus *221 unable to benefit from CPLR 1601 (1), or (b) the defendant cannot benefit from article 16 because it falls within one of the exclusions set forth in CPLR 1602. Under the present circumstances, plaintiffs argue, if this court were to determine the legal issue that defendants raise in their motions, the court would improperly be issuing an advisory opinion on a matter that may never occur. (See Cuomo v Long Is. Light. Co., 71 NY2d 349, 354 [1988].)
But plaintiffs fail to acknowledge that, whether or not a verdict is ever rendered in the four cases at hand, a declaration at this time that fixes the parties’ rights under article 16 will very likely have an immediate and powerful effect on the plaintiffs and defendants as they weigh the risks and benefits of litigating these four cases, as well as the entire docket of asbestos personal injury lawsuits statewide. A court may in its discretion render a declaratory judgment to stabilize “the rights and other legal relations of the parties to a justiciable controversy that involves substantial legal interests, when * * * the judgment will have some practical effect.” (Goodman v Reisch, 220 AD2d 383, 384 [2d Dept 1995]; see also James v Alderton Dock Yards, 256 NY 298, 305 [1931] [stating that “(t)he general purpose of the declaratory judgment is to serve some practical end in quieting or stabilizing an uncertain or disputed legal relation either as to present or prospective obligations”].) In general, a declaratory judgment is not ripe for determination if any declaration that the court might issue will only take effect if a future event, that may or may not occur, actually comes to pass. (See Prashker v United States Guar. Co., 1 NY2d 584, 592 [1956].) However, “[w]here the probability of occurrence of the contingent event is great” or a declaration “may have an immediate and direct impact on the parties’ conduct,” declaratory relief is appropriate. (Remsen Apts. v Nayman, 89 AD2d 1014, 1015 [2d Dept 1982], affd 58 NY2d 1083 [1983].)
In Remsen Apts., a lessee of apartment units in a residential premises brought a declaratory judgment action against the lessor, to declare the parties’ rights under their lease agreement with respect to the planned conversion of the premises to cooperative ownership. The lessor counterclaimed, also for declaratory relief: among other things, the lessor sought a declaration that certain payments and stock that the lessee might receive in connection with the conversion constituted “gross income” under the lease, thereby increasing the lessee’s rent. The trial court dismissed the counterclaim, apparently on the *222 ground that the conversion had not occurred because, among other things, the Attorney General had not yet approved the conversion plan. (Remsen Apts., 89 AD2d at 1014-1015.)
The appellate court found that the trial court should have issued a declaratory judgment with respect to the counterclaim. The court acknowledged that the lessee would only be required to make additional payment to the lessor under paragraph 38 of the lease if (1) the Attorney General approved the cooperative conversion, and (2) the lessee thereafter sold cooperative units. But, the Court found, a declaration of the parties’ rights under paragraph 38 would not constitute an advisory opinion, because “[t]here can be little doubt that the conduct of [the lessee] would be affected by knowledge of whether it must share with [the lessor] any of the conversion proceeds.” (Id. at 1015.) If a declaration was issued before a conversion, the Remsen Court implied, the lessee could better decide whether investing in the conversion was a sound business decision. (Id.)
Likewise, in these cases a preverdict declaration that construed the proviso in CPLR 1601 (1) will immediately affect the parties’ conduct. It would allow them to more accurately gauge the plaintiffs’ possible recovery and the defendants’ possible exposure, which in turn will improve their ability to weigh the economic risks and benefits of litigating versus settling. For these reasons, the time is ripe for a declaratory judgment.
Motions re: CPLR 1601 (1)
Until recently, the major decision addressing how bankrupt tortfeasors are treated under CPLR article 16 was issued by the United States Court of Appeals for the Second Circuit. (In re Brooklyn Navy Yard Asbestos Litig., 971 F2d 831 [2d Cir 1992], affg In re Joint E. & S. Dists. Asbestos Litig., 772 F Supp 1380 [ED NY 1991].) The Second Circuit construed “jurisdiction” in CPLR 1601 (1) to mean “effective jurisdiction” and held that the plaintiffs could not obtain “effective jurisdiction” over the bankrupt tortfeasors because they were precluded from continuing actions or processing claims against the bankrupts. For that reason, the court concluded, the bankrupts’ shares were excluded from the CPLR article 16 calculation. (In re Brooklyn Navy Yard Asbestos Litig., 971 F2d at 846; see also Matter of New York City Asbestos Litig., 175 Misc 2d 819, 823-824 [Sup Ct, NY County 1998] [following Second Circuit decision].)
*223 The Second. Circuit acknowledged that the plaintiffs could obtain “jurisdiction” over the bankrupts,[13] But the court interpreted “jurisdiction” in CPLR 1601 (1) to mean “effective jurisdiction” because of its concern that joinder would be futile. (In re Brooklyn Navy Yard Asbestos Litig., 971 F2d at 846.) In so doing, the court created an additional category of defendants to whom the proviso applied, and carved out a variance in article 16 that the Legislature had not prescribed.
The federal courts’ construction no longer controls because of recent New York State case law. The Court of Appeals has stated that the general legislative intent of article 16 is “to remedy the inequities created by joint and several liability on low-fault, ‘deep pocket’ defendants.” (Rangolan v County of Nassau, 96 NY2d 42, 46 [2001].) The statute is the result of “a painstaking balance of interests” by the Legislature and addresses the concerns both of “innocent plaintiffs” and low-fault defendants who “were consistently paying a disproportionate share of damage awards.” (Morales v County of Nassau, 94 NY2d 218, 224; see also Chianese v Meier, 98 NY2d 270, 276 [2002] [in interpreting article 16, courts’ role “is to implement the will of the Legislature”].) To further this balancing of interests, the Legislature set forth provisos and exceptions in CPLR 1601 and 1602 that either exempt certain parties and actions from article 16’s modified rule of joint and several liability, or vary the rule. (Id.) When the Legislature has not chosen to include an exemption or variance in the statute, the courts may not create one to address public policy or equitable concerns. (94 NY2d at 221, 224 [rejecting court-made article 16 exemption for domestic violence cases and orders of protection as “an entirely new exemption that is not suggested by the language of the statute or its history”]; see also Washington v City of New York, 160 Misc 2d 230, 231-232 [Sup Ct, Bronx County 1994] [declining to create exemption favoring plaintiff, who could not recover against an insolvent tortfeasor found 80% liable, because “equitable considerations simply have no standing in the interpretation of article 16”].)
In a recent decision, Kharmah v Metropolitan Chiropractic Ctr. (288 AD2d 94 [1st Dept 2001]), the First Department specifically addressed how the liability shares of bankrupt tort-feasors are treated under article 16. In Kharmah, the plaintiff brought claims for medical malpractice against a chiropractic *224 clinic and an individual chiropractor (the Chiropractic Defendants), and a hospital and three doctors (the Medical Defendants). After discovery concluded but before the trial began, the Chiropractic Defendants filed for chapter 7 bankruptcy protection. To continue the action against the Medical Defendants, plaintiff moved for an order severing the action against the Chiropractic Defendants. Over defendants’ opposition, the LAS court granted the motion. {Id. at 94.) Sometime after the severance order was issued, plaintiff discontinued the action against one of the doctors.
Thereafter the remaining Medical Defendants (the appellants) appealed the severance, arguing among other things that severance “would substantially prejudice the rights of the remaining defendants to litigate their cross-claims against and assert their statutory equitable-share-allocation rights against [the Chiropractic Defendants].”[14] The Appellate Division affirmed the severance as “a proper exercise of discretion,” but modified the trial court’s severance order to preserve the appellants’ CPLR article 16 equitable share allocation rights. {Kharmah, 288 AD2d at 94.) The Court stated that:
“equity requires that [the appellants] have the benefit of CPLR article 16 rights, even though there is an automatic stay by virtue of the bankruptcy {see, Duffy v County of Chautauqua, 225 AD2d 261, 267, lv dismissed 89 NY2d 980). In accordance with the purpose of CPLR article 16, if the [appellants’] culpability is 50% or less, their exposure for non-economic damages should be limited proportionately to their share of fault.” {Id. at 94-95.)
The First Department indicated that the bankrupt Chiropractic Defendants’ share of liability must be included when calculating the solvent defendants’ exposure, because, within the meaning of CPLR 1601 (1), the plaintiff could “obtain jurisdiction” over them. The Court cited Duffy v County of Chautauqua (225 AD2d 261 [4th Dept], lv dismissed 89 NY2d 980 [1996]) in support of its decision. (Kharmah, 288 AD2d at 94-95.) In Duffy, two construction workers were injured and a third killed when a bridge collapsed while the three workers were driving a truck over it. Plaintiffs sued the County of Chautauqua (the County) for negligence, who impleaded the workers’ employee, G & J Construction Corp. (G & J), and its principal, Steven Nichols, who had been driving a 16-ton crane *225 that was also on the bridge when it collapsed. After trial, a jury found the County 25% liable and G & J and/or Nichols 75% liable for the accident. (Duffy, 225 AD2d at 265-266.)
The Fourth Department held that the negligence of plaintiffs decedent John Duffy, the truck’s driver, could be included when apportioning the tortfeasors’ liability share under CPLR 1601, although Duffy’s coworker plaintiffs were barred from suing him under the statutory “fellow servant” rule. {See Workers’ Compensation Law §§ 11, 29 [6].)[15] The Court found that “the statutory bar of the Workers’ Compensation Law does not constitute the inability to obtain jurisdiction as intended by CPLR 1601,” because the term “jurisdiction” in CPLR 1601 (1) “refers to personal rather than to subject matter jurisdiction.” (Duffy, 225 AD2d at 266, 267; cf Rezucha v Garlock Mech. Packing Co., 159 Misc 2d 855, 860 [Sup Ct, Broome County 1993] [holding that, although State of New York was immune from suit in court, plaintiff could obtain “jurisdiction” over State within the meaning of CPLR 1601 (1)]; Dominguez v Fixrammer Corp., 172 Misc 2d 868, 869-870 [Sup Ct, Bronx County 1997] [when plaintiff had served corporate defendant which then dissolved before trial, “jurisdiction” had been obtained pursuant to article 16].) Inasmuch as Duffy’s coworkers had never shown that they could not obtain personal jurisdiction over him by serving his estate, the CPLR 1601 (1) proviso did not apply and “Duffy’s negligence, if any, would ordinarily be a factor in apportioning liability.” {Duffy, 225 AD2d at 267.)
The Fourth Department’s construction of “jurisdiction” in CPLR 1601 (1) to mean “personal jurisdiction” is technically dicta, because the Court did not need to analyze CPLR 1601 (1) to reach its ultimate holding that CPLR 1602 exempted the action from apportionment under article 16. (Duffy, 225 AD2d at 267-268.) But in Kharmah, the First Department relied upon that analysis of CPLR 1601 (1) to reach its holding that the appellants’ shares were unaffected by the Chiropractic Defendants’ bankruptcy, thus binding this court.
Personal jurisdiction is unaffected by a party’s bankruptcy filing and the attendant automatic stay: a bankruptcy stay merely suspends other court proceedings outside the bankruptcy proceeding, and does not divest those courts of jurisdiction over the bankrupt. (See Kleinsleep Prods. v McCrory Corp., *226 271 AD2d 411, 412 [2d Dept 2000] [automatic stay “did not deprive the court of jurisdiction over the action commenced but merely suspended the proceedings”]; International Fid. Ins. v European Am. Bank, 129 AD2d 679, 679-680 [2d Dept 1987] [same].)
Accordingly, it is declared that “jurisdiction” in CPLR 1601 (1) means “personal jurisdiction,” and that the culpability of a bankrupt, nonparty tortfeasor will be included when calculating the defendant tortfeasors’ exposure under CPLR 1601 (1), unless the plaintiff proves that he or she with due diligence could not obtain personal jurisdiction over the bankrupt or its estate,[16] or unless an exemption set forth in CPLR 1602 applies.[17]
Cross Motion re: CPLR 1602 (10)
Plaintiffs cross-moved “for an order holding defendants jointly and severally liable” for the liability share of any bankrupt nonparty asbestos manufacturer, pursuant to CPLR 1602 (10). This cross motion is deemed to be an application for a declaration construing the provision,[18] which affects several-only liability in a products liability action if the plaintiff is unable with due diligence to obtain “jurisdiction” over the manufacturer, and the manufacturer’s liability is based on the doctrine of strict liability.[19] In that case, the party tortfeasors are jointly liable for the manufacturer’s share.
In the cross motion, plaintiffs again contend that “jurisdiction” in this provision means “effective jurisdiction,” but that *227 argument is rejected for the same as set forth above.[20] As in CPLR 1601 (1), “jurisdiction” in CPLR 1602 (10) refers to personal jurisdiction (see Vincent C. Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 1602, at 619), and jurisdiction may be obtained over a bankrupt.[21]
Conclusion
For the reasons set forth above, it is adjudged and declared that “jurisdiction” in CPLR 1601 (1) refers to personal jurisdiction, and that the culpability of a bankrupt, nonparty tortfea-sor will be included when calculating the defendant tortfeasors’ exposure under CPLR 1601 (1), unless the plaintiff proves that with due diligence he or she was unable to obtain personal jurisdiction over the bankrupt or its estate, or unless an exemption set forth in CPLR 1602 applies, and it is further adjudged and declared that “jurisdiction” in CPLR 1602 (10) refers to personal jurisdiction.

. Moving for summary judgment, the parties in essence ask for declarations to issue. But the pleadings do not contain any claims for declaratory relief. Pursuant to CPLR 103 (c), however, the pleadings are deemed amended so as to set forth such claims. (See infra at 219.)

. (Mazura v ACandS, Inc., Sup Ct, NY County, Index No. 113954/01; Tancredi v ACandS, Inc., Sup Ct, NY County, Index No. 120136/00; Lopez v ACandS, Inc., Sup Ct, NY County, Index No. 120594/00; Powers v ACandS, Inc., Sup Ct, NY County, Index No. 119824/01.) The motions in these actions are consolidated for joint disposition.

. The cross motion by plaintiffs raises a corollary issue that only applies to product liability actions, and shall be addressed after the main issue. (See infra at 226.)

. The NYCAL parties estimate that there are now about 30,000 filed cases before me. An exact figure is unavailable, because our courts have no information about the subject matter of a given case until the plaintiff files a request for judicial intervention (RJI). As of October 18, 2002, there were 1,607 cases on the NYCAL docket. But pursuant to the case management order governing NYCAL (the CMO), plaintiffs are not required to file RTFs for most filed cases until just before they are clustered and assigned.
Given the importance of these motions for all NYCAL litigants, the court invited interested nonparties to submit amicus curiae briefs. On behalf of the moving defendants, nonparties Minnesota Mining & Manufacturing and (jointly) Conrail, CSX, NS, and American Premier Underwriters submitted papers. Congoleum Corp. and Tishman Liquidating Corp., who are defendants in other asbestos lawsuits, but not the four under consideration, purportedly “moved” in their cases, without filing formal motions, for the same relief that moving defendants seek; the court will deem their papers as amicus curiae briefs for these motions. On behalf of plaintiffs, the law firms of Weitz & Luxenberg submitted papers, and Wilentz, Goldman & Spitzer; Levy Phillips & Konigsberg, LLP; Early & Strauss; and the New York State Trial Lawyers Association submitted amicus curiae briefs.

. An illustration: In a personal injury action, it is found that defendant A is 30% at fault and defendant B is 70% at fault for the plaintiff’s noneconomic loss of $100,000. Under article 16, defendant A, whose share of fault is less than 50% is liable for no more than $30,000 of the loss (30% of $100,000), while defendant B, whose share exceeds 50% is liable for the entire $100,000.

. The second proviso in the statute applies to actions that implicate the Workers’ Compensation Law; it is irrelevant here.

. “[T]he culpable conduct of any person not a party to [an] action shall not be considered in determining any equitable share [pursuant to CPLR 1601 (1)] if the claimant proves that with due diligence he or she was unable to obtain jurisdiction over such person in said action * * * .”
Another illustration: Plaintiff P sues tortfeasors A and B in a personal injury action. P also diligently tries to join tortfeasor C, a nondomiciliary of New York, but is unable to obtain jurisdiction over C. P is found to have noneconomic damages of $100,000. As to liability, defendant A is found to be 30% at fault, defendant B to be 50% at fault, and nonparty C to be 20% at fault. A’s and B’s liability to P is calculated as follows: pursuant to the proviso in CPLR 1601 (1), C’s share of the total fault (20%) is not considered in determining A’s and B’s liability shares. Deducting 20% from 100% leaves 80% which is used to determine the limit of A and B’s exposure pursuant to CPLR 1601 (1). Thus A’s share is adjusted from 30/100 to 30/80, or 37.5%; since 37.5% is less than 50% A’s exposure is capped at 37.5% of $100,000, or $37,500. As for B, its share of fault is adjusted from 50/100 to 50/80, or 62.5% which exceeds 50%; accordingly, B is jointly and severally liable for the entire $100,000. It is worth noting that, once the shares of culpability have been adjusted, A’s exposure rises significantly (from $30,000 to $37,500), and B’s exposure doubles (from $50,000 to $100,000).

. See supra n 7.

. Ortiz v Fibreboard Corp., 527 US 815, 821 (1999).

. By the end of 2000, more than 600,000 people in the United States had filed claims for asbestos-related personal injuries. (Stephen J. Carroll et al., Asbestos Litigation Costs and Compensation, at 40-41 [RAND Inst for Civ J 2002].)

. UNR Industries, Inc. (filed in 1982), Johns-Manville Co. (1982), Ama-tex Corp. (1982), Waterman Steamship Corp. (1983), Wallace & Gale Co. (1984), Forty-Eight Insulations, Inc. (1985), PACOR (1986), Prudential Lines, Inc. (1986), Standard Insulations, Inc. (1986), U.S. Lines (1986), Nicolet, Inc. (1987), Gatke Corp. (1987), Todd Shipyards (1987), Chemetron Corp. (1988), Raytech (1989), Delaware Insulations (1989), Celotex Corp. (1990), Hillsbor-ough Holdings (1990), National Gypsum Co. (1990), Standard Asbestos Mfg. & Insul. (1990), Eagle-Picher (1991), H.K. Porter Co. (1991), Cassiar Mines (1992), Kentile Floors (1992), Keene Corp. (1993), American Shipbuilding, Inc. (1993), Lykes Brothers Steamship (1995), Rock Wool Mfg. (1996), SGL Carbon (1998), M.H. Detrick (1998), Brunswick Fabricators (1998), Fuller-Austin Insul. (1998), Harmschfeger Corp. (1999), Joy Technologies (1999), Rutland Fire & Clay (1999), Babcock & Wilcox (2000), Pittsburgh Coming (2000), Bums & Roe Enterprises (2000), E.J. Bartells (2000), Owens Coming (2000) , Armstrong World Industries (2000), G-l Holdings (GAF Corp.) (2001), W.R. Grace (2001), Skinner Engine Co. (2001), USG (US Gypsum) Corp. (2001) , Federal Mogul (2001), Eastco Industrial Safety Corp. (2001), Washington Group Int’l, Inc. (2001), Bethlehem Steel (2001), North American Refractories (NARCO) (2002), Kaiser Aluminum (2002), Plibrico Refractories (2002), Porter-Hayden (2002), American Club (2002), Huxley Development Corp. (2002), Harbison-Walker Refractories Co. (2002), Continental Producers Corp. (2002), A.P. Green Indus. (2002), Shook & Fletcher (2002), Atra Group, Inc. (Synkoloid) (2002), and ACandS, Inc. (2002).
All these corporations filed bankruptcy petitions indicating that asbestos litigation was the primary cause of their insolvency. (Carroll et al., Asbestos Litigation Costs and Compensation, at 71.)

. It is claimed by certain defendants that, in some of these products, the asbestos was encapsulated or otherwise contained so as to emit relatively few respirable asbestos fibers under normal use.

. In re Brooklyn Navy Yard Asbestos Litig., 971 F2d at 846 (“As a technical matter entities which have filed petitions for bankruptcy are subject to suit * * * ”).

. Brief for defendants-appellants at 2.

. The Duffy decision preceded the addition in 1996 of the second proviso in CPLR 1601 (1) (see supra n 6), and thus did not address it.

. For example, a plaintiff may with due diligence be unable to obtain jurisdiction over a nondomiciliary of New York State if there is no basis for long-arm jurisdiction. (See David D. Siegel, NY Prac § 168C, at 270 [3d ed 1999].)

. Some NYCAL defendants, as amicus curiae, seek a further declaration that, as a matter of law, the plaintiffs have not diligently tried to join the bankrupts. The application is denied. Whether the plaintiffs have used due diligence is at least partly an issue of fact, and no proof about plaintiffs’ efforts to join the bankrupts has been adduced. Moreover, the plaintiffs can still try to join the bankrupts.

. See discussion, supra.

. “The limitation set forth in [article 16] shall: * * * not apply to any person held liable in a product liability where the manufacturer of the product is not a party to the action and the claimant establishes by a preponderance of the evidence that jurisdiction over the manufacturer could not with due diligence be obtained and that if the manufacturer were a party to the action, liability for claimant’s injury would have been imposed upon said manufacturer by reason of the doctrine of strict liability, to the extent of the equitable share of such manufacturer.” (CPLR 1602 [10].)

. See supra at 225-226.

. A plaintiff may be unable to obtain jurisdiction under CPLR 1602 (10) in other situations. (See supra n 16.)