**Debra J. BIFARO, Individually and as Administrator of the Estate of Louis J. Bifaro, and on behalf of distributees, et al., Plaintiffs,**

v.

**ROCKWELL AUTOMATION, Defendant.**

**No. 00–CV–434C.**

United States District Court, W.D. New York.

May 8, 2003.

Gresens & Gillen LLP (Patricia Gillen, Esq., and Joseph J. Manna, Esq., of Counsel), Buffalo, NY, for Plaintiffs.

Nixon Peabody LLP (Samuel Goldblatt, Esq., and David W. Olson, Esq., of Counsel), Buffalo, NY, for Defendant.

CURTIN, District Judge.

On May 6 and 7, 2003, the court heard argument on the parties' various motions *in limine* seeking several forms of relief in advance of the trial. On May 7, the court issued an order dealing with defendant's motions with respect to the further deposition of plaintiffs' liability expert, and production of additional materials from the expert's files. This order constitutes the court's rulings on plaintiffs' motions (1) dealing with apportionment under Article 16 of the New York Civil Practice Law and Rules ("CPLR"), and (2) to voluntarily dismiss A.J. Wahl from the case.

## BACKGROUND

On June 10, 1998, Louis Bifaro, age 45, was working as a maintenance electrician at the Buffalo China plant located on Hayes Street, in Buffalo, New York. He was performing a repair with a metal crescent wrench on a high voltage disconnect switch housed in an electrical control panel box when an "arc blast" occurred, causing severe burns which eventually resulted in his death on July 22, 1998, after 42 days of hospitalization.

Plaintiff Debra Bifaro sued in New York State Supreme Court in April 2000, individually and on behalf of her three children, seeking damages for wrongful death against the Allen–Bradley Company, Rockwell Automation's corporate predecessor (the manufacturer of the switch), and A.J. Wahl, Inc. (the manufacturer/installer of the control panel box). A.J. Wahl is bankrupt and dissolved, and has not answered or otherwise appeared in the action.

In May 2000, the case was removed to this court on the basis of 28 U.S.C. § 1334(b) as "related to" Wahl's bankruptcy proceedings. The case proceeded through fact and expert discovery, and the court was asked to resolve a number of disputes which arose during the course of depositions. However, there was no dispositive motion practice until the very eve of trial, when a series of motions were filed by the parties seeking to limit the proof and the scope of issues to be presented to the jury. The following discussion deals with the motions filed by plaintiffs to preclude apportionment under Article 16 of the CPLR (Item 68), and to voluntarily dismiss A.J. Wahl from the case (Item 70).

## DISCUSSION

### I. Applicability of New York CPLR Article 16

One of the central disputes between the parties in this case concerns the question whether defendant Rockwell Automation is entitled to apportionment of damages for "non-economic loss"[1] under New York

---

**1.** As defined in Article 16, " 'non-economic loss' includes but is not limited to pain and suffering, mental anguish, loss of consortium or other damages for non-economic loss." N.Y.C.P.L.R. § 1600.

CPLR Article 16. The primary rule is set forth in CPLR § 1601(1), which provides:

> Notwithstanding any other provision of law, when a verdict or decision in an action or claim for personal injury is determined in favor of a claimant in an action involving two or more tortfeasors jointly liable ... and the liability of a defendant is found to be fifty percent or less of the total liability assigned to all persons liable, the liability of such defendant to the claimant for non-economic loss shall not exceed that defendant's equitable share determined in accordance with the relative culpability of each person causing or contributing to the total liability for non-economic loss; provided, however that the culpable conduct of any person not a party to the action shall not be considered in determining any equitable share herein if the claimant proves that with due diligence he or she was unable to obtain jurisdiction over such person in said action ....

 Enacted in 1986 as part of a larger package of tort law reform legislation, CPLR Article 16 modified the traditional rules of joint and several liability. Before Article 16, a plaintiff could hold any one tortfeasor liable for the entire non-economic loss, even though it may have been only partially responsible. After Article 16, a joint tortfeasor can now limit its liability for non-economic losses to its proportional share upon proof that it is fifty percent or less culpable for the plaintiff's injury. *See Morales v. County of Nassau*, 94 N.Y.2d 218, 223, 703 N.Y.S.2d 61, 724 N.E.2d 756 (1999);

The legislative aim of Article 16 was to significantly limit joint and several liability for non-economic damages in personal injury cases, thereby protecting potential defendants such as municipalities and other "deep pockets" from being held liable for the full amount of a judgment when their actual percentage of fault was small. *See* Joel Slawotsky, *New York's Article 16 and Multiple Defendant Product Liability Litigation: A Time to Rethink the Impact of Bankrupt Shares on Judgment Molding*, 76 St. John's L. Rev. 397, 401 (Spring 2002). However, the limitation remains inapplicable, and the traditional rule of joint and several liability remains in effect, for economic loss, for parties allocated more than fifty percent of the liability, and for defendants who satisfy one or more of the various exemptions set forth in CPLR § 1602. *Id.* at 402; *Morales,* 94 N.Y.2d at 223, 703 N.Y.S.2d 61, 724 N.E.2d 756.

In this motion (Item 69), plaintiffs assert that defendant Rockwell Automation should be precluded from attempting to apportion any liability for non-economic losses to either Buffalo China (Mr. Bifaro's employer) or A.J. Wahl (the bankrupt manufacturer of the "Quintomatic" clay-making machine and the control box which housed the subject switch). Wahl was served and is listed as a defendant on the docket sheet, but has not answered or otherwise appeared in the action. Buffalo China has never been a party to the action.

Plaintiffs' motion is premised on the following grounds: (a) Article 16's limitations do not apply to an action for wrongful death, (b) Rockwell is not entitled to apportionment as to Wahl because Wahl is bankrupt, and thus is beyond the court's "effective jurisdiction," and (c) the claims in this case are subject to the express exemption of § 1602(4), precluding apportionment as to the employer, Buffalo China. Each of these arguments is now addressed in turn.

## A. Wrongful Death

 As stated in the Practice Commentary to section 1601, "since wrongful death damages are, by definition, strictly pecuniary in nature (see EPTL § 5–4.3),

the noneconomic-loss limitation excludes wrongful death claims from the reach of Article 16." N.Y.C.P.L.R. § 1601, Practice Commentary C1601:1(citing *Ryan v. Beavers*, 170 A.D.2d 1045, 566 N.Y.S.2d 112 (4th Dep't 1991)) (apportionment defense of CPLR Article 16 "does not apply to plaintiff's cause of action for wrongful death, which involves economic loss."). However, where the complaint alleges both economic and non-economic loss, proof of absent parties' culpability has been allowed for the purposes of apportionment, since it "would be admissible as to one part of plaintiff's claim but not to the other." *Rezucha v. Garlock Mechanical Packing Co., Inc.*, 159 Misc.2d 855, 861–62, 606 N.Y.S.2d 969, 973 (1993).

Accordingly, plaintiffs' motion *in limine* is denied to the extent it seeks a ruling that Article 16 does not apply to this case.

## B. A.J. Wahl

█ Plaintiffs also seek an order precluding Rockwell from attempting to apportion non-economic damages to A.J. Wahl, the manufacturer of the claymaking machine and switch control panel. Wahl is bankrupt and, according to the information made available to the court, was dissolved in September 1998, prior to the commencement of this action in April 2000 (*see* Notice of Removal, Item 1, ¶ 7).

Plaintiffs rely on the Second Circuit's opinion in *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831 (2d Cir.1992), which until fairly recently provided controlling guidance as to how New York courts would treat bankrupt tortfeasors under CPLR Article 16. In the context of the complicated, consolidated trial of some seventy-nine asbestos-related personal injury and wrongful death actions brought against a multitude of corporate defendants, many of whom were bankrupt, the Second Circuit held:

As a technical matter entities which have filed petitions for bankruptcy are subject to suit, but the automatic stay [of 11 U.S.C. § 362(a) ] precludes processing a claim against them. No amount of diligence could result in the plaintiff bringing bankrupt parties into this litigation; hence it does not appear that their share should be considered pursuant to Article 16.

... Because plaintiffs could not with due diligence obtain effective jurisdiction over the bankrupt parties, the shares of fault attributed to those parties were properly excluded from the Article 16 calculation.

*Id.* at 846 (citations omitted) (quoting *In re Eastern and Southern Districts Asbestos Lit.*, 772 F.Supp. 1380 (E.D.N.Y.1991)); *see also In re New York City Asbestos Litigation*, 175 Misc.2d 819, 823–24, 670 N.Y.S.2d 735 (1998) (following *Brooklyn Navy Yard* ).

Subsequent decisions of the New York Court of Appeals and various departments of the Appellate Division strongly suggest that this construction of CPLR Article 16 is no longer viable. For example, in its discussion of the policies underlying Article 16's modification of traditional joint and several liability rules, the Court of Appeals in *Morales* reaffirmed the principle that courts may not create statutory exemptions which the Legislature has not chosen to include in the statute. As stated by the Court of Appeals:

This Court has repeatedly declined to interfere with the Legislature's policy choices as beyond the realm of judicial authority. Where the Legislature has spoken, indicating its policy preferences, it is not for courts to superimpose their own.

Here, the Legislature has spoken. In section 1602, it has provided an extensive list of exemptions from the modified

joint and several liability rule. Relying on the standard canon of construction of *expressio unius est ex[cl]usio alterius,* we can infer that the expression of these exemptions in the statute indicates an exclusion of others. This is especially true in the case of article 16, which, as demonstrated by its legislative history, was the product of a painstaking balance of interests. These interests included, among many others, the burdens to be imposed on innocent plaintiffs as well as a concern that defendants at fault to a small degree were consistently paying a disproportionate share of damages awards, adversely affecting the availability and affordability of liability insurance.

*Morales,* 94 N.Y.2d at 224–25, 703 N.Y.S.2d 61, 724 N.E.2d 756; *see also Chianese v. Meier,* 98 N.Y.2d 270, 276, 746 N.Y.S.2d 657, 774 N.E.2d 722 (2002) (in interpreting Article 16, courts' role "is to implement the will of the Legislature"); *Rangolan v. Co. of Nassau,* 96 N.Y.2d 42, 46, 725 N.Y.S.2d 611, 749 N.E.2d 178 (2001) (when Legislature has not chosen to include an exemption or variance in the statute, the courts may not create one to address public policy or equitable concerns).

More specifically, the Appellate Division in *Kharmah v. Metro. Chiropractic Ctr.,* 288 A.D.2d 94, 733 N.Y.S.2d 165 (1st Dep't 2001), recently addressed how the liability shares of bankrupt tortfeasors are to be treated under Article 16. In *Kharmah,* the plaintiff brought claims for medical malpractice against a chiropractic clinic and an individual chiropractor, as well as against a hospital and three doctors. After discovery concluded but before the trial began, the chiropractic defendants filed for Chapter 7 bankruptcy protection. The First Department upheld the trial court's severance of the action against the chiropractic defendants, pursuant to CPLR 603,

finding it a proper exercise of the court's discretion in order to prevent prejudice to the plaintiff stemming from any delay related to the bankruptcy proceedings. In doing so, the appellate court modified the trial court's severance order to preserve the medical defendants' "CPLR article 16 equitable share allocation rights." *Kharmah,* 288 A.D.2d at 94, 733 N.Y.S.2d 165. The court stated:

> [W]hile the bankrupt defendants will not participate in the trial, equity requires that [the medical defendants] have the benefit of CPLR article 16 rights, even though there is an automatic stay by virtue of the bankruptcy. In accordance with the purpose of CPLR Article 16, if the [medical defendants]' culpability is 50% or less, their exposure for non-economic damages should be limited proportionately to their share of fault.

*Id.* at 94–95, 733 N.Y.S.2d 165 (citations omitted).

In support of its decision, the First Department cited the earlier Fourth Department case of *Duffy v. County of Chautauqua,* 225 A.D.2d 261, 649 N.Y.S.2d 297 (4th Dept.), *appeal dismissed,* 89 N.Y.2d 980, 656 N.Y.S.2d 737, 678 N.E.2d 1353 (1997). *Duffy* did not involve the precise issue of apportionment of a bankrupt tortfeasor's share. Nonetheless, the *Kharmah* court found guidance with respect to the operation of Article 16 to limit the viable defendants' liability for non-economic loss notwithstanding the protection afforded by the automatic stay of bankruptcy. In *Duffy,* two construction workers were injured and a third killed when the bridge they were driving over collapsed. The plaintiffs sued the County for negligence, and the County impleaded the workers' employee, G & J Construction Corp., and its principal, Steven Nichols, who had been driving a 16–ton crane that was also on the bridge

when it collapsed. After trial, a jury found the County twenty-five percent liable and G & J/Nichols seventy-five percent liable for accident. The Fourth Department held that the negligence of the deceased truck driver could be considered when apportioning the tortfeasors' liability shares under CPLR 1601, notwithstanding the provision in the Workers' Compensation Law barring suit against "fellow servants." The court found that "the statutory bar of the Workers' Compensation Law does not constitute the inability to obtain jurisdiction as intended by CPLR 1601," because the term "jurisdiction" in CPLR 1601(1) "refers to personal rather than to subject matter jurisdiction." *Duffy*, 225 A.D.2d at 266, 267, 649 N.Y.S.2d at 301 (citing David Siegel, *New Law Partially Abolishing the Joint Liability Rule in Tort Cases—Part 1*, 322 N.Y. LAW DIGEST 1, 3 (October 1986)). Since the driver's co-workers had not demonstrated the inability to obtain personal jurisdiction over him by serving his estate, the CPLR 1601(1) proviso did not apply and the driver's negligence could be considered as a factor in apportioning liability. *Id.*

Perhaps the most comprehensive discussion of the issue appears in a more recent lower court opinion in the *New York City Asbestos Litigation* cases, entitled *Tancredi v. AC & S, Inc.*, 194 Misc.2d 214, 750 N.Y.S.2d 469 (2002). There, upon examining the *Brooklyn Navy Yard* case in light of the subsequent New York Court of Appeals' holdings in such cases as *Rangolan* and *Morales*, the court determined that

the Second Circuit had "created an additional category of defendants to whom the proviso applied, and carved out a variance in Article 16 that the Legislature had not prescribed." *Tancredi*, 194 Misc.2d at 223, 750 N.Y.S.2d at 476. Relying on the language in *Duffy* and the holding in *Kharmah*, the court in *Tancredi* found that "jurisdiction" in CPLR § 1601(1) means "personal jurisdiction," and that the culpability of a bankrupt tortfeasor should be included when calculating the apportionment of non-economic damages, "unless the plaintiff proves that he or she with due diligence could not obtain personal jurisdiction over the bankrupt or its estate, or unless an exemption set forth in CPLR 1602 applies." *Id.*, 194 Misc.2d at 226, 750 N.Y.S.2d at 479.

Based on this discussion, it is evident that the prevailing rule of law in New York would allow the jury to consider the relative culpability of A.J. Wahl in apportioning non-economic damages under CPLR Article 16, should the jury find that the liability of Rockwell is fifty percent or less of the total liability assigned to all persons liable.[2] On the record before the court, plaintiffs have failed to establish the inability to obtain personal jurisdiction over the bankrupt entity A.J. Wahl. Although (as mentioned above) the record suggests that Wahl was bankrupt and dissolved before this action was commenced (*see* Item 1, ¶ 7), plaintiffs have maintained all along that Wahl was amenable to the court's jurisdiction, having been served with the state court summons and complaint (*see*,

---

**2.** This ruling is made notwithstanding the apparent conflict still remaining between the holding of the Second Circuit in *Brooklyn Navy Yard* and the more recent holdings in *Morales, Duffy, Kharmah*, and *Tancredi*, as outlined in the text. In such a situation, this court must follow the outcome it believes the New York Court of Appeals would reach with respect to construction of the state statute, considering all of the resources to which that court could look, without giving binding authority to the Second Circuit's construction. *See Elliott Associates, L.P. v. Banco de la Nacion*, 194 F.3d 363, 370 (2d Cir.1999); *Chrysler Financial Company, L.L.C. v. Schlant*, 243 B.R. 613, 616–17 (W.D.N.Y. 2000).

*e.g.*, Item 70, Gillen Aff., ¶ 3). Since the action was commenced in state court, the federal court record contains no proof of service.

Accordingly, on this record, plaintiffs' motion *in limine* is denied to the extent that it seeks an order precluding Rockwell from attempting to apportion non-economic damages to A.J. Wahl.

### C. Buffalo China

■ Plaintiffs contend that Rockwell is not entitled to Article 16 apportionment based on the relative culpability of Buffalo China because the claims are subject to the express exemption of § 1602(4). That section provides:

> The limitations set forth in this article shall ... not apply to claims under the workers' compensation law or to a claim against a defendant where claimant has sustained a "grave injury" as defined in section eleven of the workers' compensation law to the extent of the equitable share of any person against whom the claimant is barred from asserting a cause of action because of the applicability of the workers' compensation law provided, however, that nothing in this subdivision shall be construed to create, impair, alter, limit, modify, enlarge, abrogate, or restrict any theory of liability upon which any person may be held liable.

The parties agree, and the court's research confirms, that the existing case law is of virtually no help in interpreting this exemption in cases where the plaintiff's employer is the nonparty tortfeasor. However, the secondary sources provide some practical guidance. For example, the Practice Commentary to section 1601 provides as follows:

> If the injured employee's injuries are grave, meaning that the defendant will be able to seek contribution or indemni-

ty from the employer, a 1996 amendment to CPLR 1602(4) describes the effect in the employee's action: the limitations of Article 16 do not apply to the extent of the equitable share of the plaintiff's employer. Say, for example, outsider A is found 40% at fault, outsider B 30% at fault, and the employer 30% at fault. A would be liable to plaintiff for 70% of the noneconomic losses (severally for its own 40% share and jointly for the employer's 30%), and B would be liable to plaintiff for 60% (severally for its own 30% and jointly for the employer's 30%). Since the employee's injuries are grave, the outsider who pays more than its equitable share may then seek contribution from the employer.

N.Y.C.P.L.R. § 1601, Practice Commentary C1601:4.

Professor Siegel further explains:

An odd situation results from subdivision 4 of CPLR 1602. The subdivision concerns the well known situation in which employee E is injured on the job in part by the fault of employer R, but can't sue R because of the exclusivity of the remedy of workers' compensation against an employer. E can sue any other person, however, such as T, responsible in part for E's injury, and T is then allowed to implead R for contribution in this anomalous but frequent New York scenario. As originally drafted, CPLR 1602(4) denied an Article 16 adjustment to the defendant who impleaded the employer, but apparently allowed the adjustment to the defendant who did not implead the employer but did prove fault on the part of the absent employer.

Those distinctions are apparently eliminated by a 1996 amendment of CPLR 1602(4), made as part of the Omnibus Workers' Compensation Reform Act of 1996. An important part of the

act is that it precludes the defendant's impleader of the plaintiff's employer unless it is shown that the employee sustained a "grave injury," as defined by statute. The amendment applies to the situation in which grave injury to the plaintiff does exist, but it is not clear what is supposed to happen. To the extent of the employer's share, the defendant is apparently not entitled to an Article 16 adjustment. If that is so, the defendant would be responsible to the plaintiff for the employer's share even if the defendant's own share comes to 50% or less, but would of course be entitled to a contribution judgment against the employer for whatever of the employer's share the defendant pays.

David Siegel, NEW YORK PRACTICE § 168C, *"Joint" Tort Liability Adjustment; Provisos and Exceptions* (2002) (footnotes omitted).

The same analysis is contemplated by the New York Pattern Jury Instructions, which provide:

> CPLR 1602(4) addresses the issue of limitation of liability when an employee injured while at work sues someone other than the employer. Such a defendant can implead the employer and obtain contribution provided the employee sustained a "grave injury." Under CPLR 1602(4), where defendant impleads plaintiff's employer, CPLR Article 16 will not apply "to the extent of the equitable share" of the employer. As a result, defendant remains fully liable to plaintiff for all economic and non-economic loss and apportionment will be made between defendant and the employer only for contribution purposes. The result is no different where defendant does not implead plaintiff's employer since plaintiff could not have successfully obtained jurisdiction with due diligence over the employer. This result would appear to comport with the apparent public policy that an injured employee be fairly compensated for the injury and not be limited to the proportion of fault of a particular defendant.

1B N.Y.P.J.I. § 2:275.1 (Comparative Fault—Apportionment of Fault Between Defendants) (Supp.2003); *see also id.*, Special Verdict Form PJI 2:275 SV–II (Apportionment of Fault and Limitation of Liability).

Defendant cites *Brown v. State*, 268 A.D.2d 548, 702 N.Y.S.2d 617 (2nd Dep't 2000), in support of the argument that the employer's liability should be considered for apportionment purposes in cases, such as this one, where the defendant did not implead the employer. However, in *Brown* the Appellate Division specifically found that the 1996 amendment to Article 16 did not apply since the action was commenced in 1994, before the effective date of the amendment.

Accordingly, plaintiffs' motion *in limine* is granted to the extent that it seeks an order precluding apportionment of non-economic damages to Buffalo China.

## II. Motion to Dismiss A.J. Wahl

■ Plaintiffs also seek an order allowing them to voluntarily discontinue their claims against A.J. Wahl pursuant to Fed.R.Civ.P. 41(a)(1) and 21. Rule 41(a)(1) provides:

> [A]n action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action.

Rule 41(a)(2) permits an action to be dismissed at the plaintiff's request "on order

of the court and upon such terms and conditions as the court may deem proper." The decision whether to grant a plaintiff's motion for voluntary dismissal rests with the sound discretion of the trial court. *See Catanzano v. Wing,* 277 F.3d 99, 109 (2d Cir.2001). Generally, a voluntary dismissal will be allowed "if the defendant will not be prejudiced thereby." *Wakefield v. Northern Telecom, Inc.,* 769 F.2d 109, 114 (2d Cir.1985); *Hinfin Realty Corp. v. The Pittston Company,* 206 F.R.D. 350, 355 (E.D.N.Y.2002).

Plaintiffs' motion to dismiss should be granted, for two reasons. First, as plaintiffs point out, courts within the Second Circuit have recognized the unilateral right of a plaintiff to discontinue an action against a defendant, such as Wahl, who has not answered or appeared. *See, e.g., Nelson v. Bronx Lebanon Hosp. Ctr.,* 1998 WL 474090, at *1 n. 1 (S.D.N.Y.1998); *General Foods Corp. v. Jay V. Zimmerman Co.,* 1990 WL 115714, at *2 (S.D.N.Y. 1990).

Second, in light of the court's ruling above on apportionment of non-economic damages under Article 16, defendant cannot demonstrate that it will be prejudiced by discontinuance of the action against Wahl. The only practical effect dismissal would have is removal of Wahl from the caption. Whether Wahl remains a party or not, the jury will be entitled to hear evidence pertaining to Wahl's conduct, such as incorporation of the switch in the control panel and installation of the panel at Buffalo China, in considering relative culpability for apportionment purposes. Any concerns about juror confusion about the reasons for Wahl's absence from the trial can be addressed by an appropriate explanatory charge.

Accordingly, plaintiffs' motion (Item 70) for voluntary dismissal of the action against A.J. Wahl is granted.

### CONCLUSION

For the foregoing reasons, plaintiffs' motion *in limine* (Item 68) is denied to the extent it seeks a ruling that CPLR Article 16 does not apply to this case, and to the extent it seeks an order precluding Rockwell from attempting to apportion non-economic damages to A.J. Wahl. Plaintiffs' motion *in limine* (Item 69) is granted to the extent it seeks an order precluding apportionment of non-economic damages to Buffalo China.

Plaintiffs' motion (Item 70) for voluntary dismissal of the action against A.J. Wahl, Inc., is granted. The Clerk of the Court is directed to take the steps necessary to remove A.J. Wahl, Inc., from the caption of the case.

So ordered.