Fox v Tioga Constr. Co. (2004 NY Slip Op 50012(U))

[*1]

Fox v Tioga Constr. Co.

2004 NY Slip Op 50012(U)

Decided on January 9, 2004

Supreme Court, Oneida And Albany County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 9, 2004

Supreme Court, Oneida And Albany County
 THEODORE FOX, JR., and CHARLOTTE FOX, Plaintiffs, 
against
TIOGA CONSTRUCTION COMPANY, INC., Defendant. ACTION 1 
 TIOGA CONSTRUCTION COMPANY, INC., Defendant-Third Party Plaintiff 
 against HARZA NORTHEAST, INC. STETSON-HARZA, INC., MWH ARCHITECTS AND ENGINEERS OF NEW YORK, P.C., HARZA ENGINEERING COMPANY and M.J. ENGINEERING AND LAND SURVEYING, P.C., Third-Party Defendants. ACTION 2 STATE OF NEW YORK AND NEW YORK STATE DEPARTMENT OF TRANSPORTATION, Plaintiffs,
against
STETSON-HARZA, INC., HARZA NORTHEAST, INC., TIOGA CONSTRUCTION COMPANY, INC., MJ ENGINEERING AND LAND SURVEYING, P.C., HIGH STEEL STRUCTURES, INC., Defendants. ACTION 3
Index: CA2002-002866

Michael Laucello, Esq. for the Plaintiffs, Action 1.
CARTER, CONBOY, CASE, BLACKMORE, MALONEY & LAIRD, P.C. (Joseph T. Perkins, Esq., of Counsel) for the Defendant (Action 1) Third Party Plaintiff (Action 2) Tioga Construction Company, Inc.
POSTNER & RUBIN (Deborah Roth, Esq.) for the Third-Party Defendants HARZA NORTHEAST, INC., STETSON-HARZA, INC., MWH ARTHITECTS AND ENGINEERS OF NEW YORK, P.C. AND HARZA ENGINEERING COMPANY (Action 2), and Defendants STETSON-HARZA, INC. and HARZA NORTHEAST, INC. (Action 3)
PHELAN, BURKE & SCOLAMIERO, LLP, (Kevin P. Burke, Esq., of Counsel) for the Plaintiffs STATE OF NEW YORK AND NEW YORK STATE DEPARTMENT OF TRANSPORTATION, Action 3

[*2]Robert F. Julian, J.
RELIEF REQUESTED:Third party defendants HARZA NORTHEAST, INC. STETSON-HARZA, INC., MWH ARCHITECTS AND ENGINEERS OF NEW YORK, P.C., HARZA ENGINEERING COMPANY in action 2 and defendants HARZA NORTHEAST, INC. and STETSON-HARZA, INC. in action 3 move to consolidate all actions; Defendant-Third Party Plaintiff TIOGA CONSTRUCTION COMPANY, INC. cross moves for joint trial of actions. 
HOLDING:Cross motion for Joint Trials of actions is GRANTED.
DISCUSSION: These actions arise from the October 10, 2002 collapse of a pedestrian bridge then being constructed over and as part of the new Utica  Rome expressway in Marcy, New York. A number of workers were present on and around the bridge at the time of the collapse. A large number of emergency personnel medical, rescue, police, etc.  responded to this disaster. Action 1 concerns the personal injuries suffered by a worker on the project. Action 2 is the third party action for contribution and indemnification arising therefrom. Liability has been established against Tioga in Action 1, with issues of the amount of damages and third party liability outstanding. Action 3 is brought by the State of New York, the owner of the project, against parties allegedly responsible for the collapse, alleging contractual and common law indemnification, for the damages which may be sustained by it in consequence of nine Court of Claims cases which are pending, regarding personal injuries to other workers and the death of one.
This Court has had substantial prior involvement in this matter, first by way of a motion for pre-action discovery (Matter of Theodore Fox, Jr 3/4/2003 N.Y.L.J. 29, col. 6) and then by way of a summary judgment motion (Fox v. Tioga Const. Co., Inc. 764 N.Y.S.2d 570, 2003 N.Y. Slip Op. 23714), whereby we granted summary judgment in favor of the Plaintiff on his Labor Law §240 claim in Action 1.
All of the nine claims against the State are assigned to one Court of Claims Judge, with whom this Court has collaborated to create a combined discovery schedule that allows all parties and witnesses to be deposed at one time for the purpose of all ten pending cases. Moreover, as a result of the pre-action discovery application, this Court has ordered that the State collect and [*3]maintain potentially relevant material and relevant materials at a central location in Utica for the use in all of the pending lawsuits arising out of this event.
The instant motions and cross-motions involve the further management of the lawsuits arising from the collapse, and concern the number and locations of the necessary fact-finding proceedings.
CPLR 602[a] provides for joint trial when there are common questions of law or fact. "Although the trial court's discretion in determining a motion for a joint trial is wide, the interests of justice and judicial economy are better served by joint trials wherever possible. . . " Megyesi v. Automotive Rentals, Inc., 115 A.D.2d 596, 496 N.Y.S.2d 473 [2nd 1985].
The judicial policy favoring joint trials should be adhered to unless there will be prejudice to a substantial right of the objecting party:

Although a motion for joint trials is addressed to the sound discretion of the trial court, the motion should be granted where there are common issues of law or fact unless the party resisting joint trials demonstrates prejudice to a substantial right (see, Fashion Tanning Co. v. D'Errico & Farhart Agency, 105 A.D.2d 1034, 1035, 483 N.Y.S.2d 471; see also, CPLR 602[a] ). Because the three actions in question all arose out of the same accident, the interests of judicial economy favor joint trials (see, Mitchel v. Thacker, 159 A.D.2d 701, 553 N.Y.S.2d 53). Plaintiffs failed to meet their burden of demonstrating that they would be substantially prejudiced by a joint trial.
Zimmerman v. Mansell 184 A.D.2d 1084, 584 N.Y.S.2d 378 [4th 1992].
The significant common questions of fact in this case concern why this bridge collapsed during its original construction. As previously noted, this Court has had substantial prior contact with this case. The trial of the issues presented in both cases will require the full forensic evaluation of the collapse and the conduct of all involved persons and organizations. This will require the testimony of innumerable lay and expert witnesses and the full explication of complex engineering assessments. Every reasonable effort should be made to reduce the number of times these people will testify and to locate the trial in a convenient place. This will be a costly, time consuming, and difficult case for the parties to try. The interests of judicial economy compel a joint trial if possible, so that the same factual issues be tried the minimum number of times. [FN1]
Accordingly, the cases should be joined for trial because there are common questions of [*4]fact, unless the objecting party can demonstrate substantial prejudice.
The State of New York is the only party in the proceedings who objects. It claims that it will be prejudiced by a joint trial. There would, it claims, be juror confusion because the specific nature of the indemnification/contribution claims are different in the two actions. The State is not a party in the Fox action, faces no claim against it or liability therefore, and likewise cannot and does not seek indemnification respecting it. Hence, the State claims, it's apportioned fault has no bearing on the Fox action, and, it says, the jury would not be considering the same. Action 2 does not include the State as a party, since the State can't be sued in Supreme Court. Hence there would be alleged confusion since the State's fault might be relevant in one action (3) but not the other (2). As to the claim for indemnification by the State for the Court of Claims actions, Fox is not involved in those in any way, but the State's proportional responsibility is, thus further adding to confusion. The State discusses the possibility of divergent findings in the presently pending three actions (Albany County, Oneida County, Court of Claims). The State argues that the present posture of Fox makes joinder inappropriate. Liability has already been determined in Fox against Tioga pursuant to Labor Law §240. The jury's verdict could be affected by listening to testimony concerning Fox's injuries.
The State further argues that prejudice will arise from joinder because one plaintiff will have to be preferred over another in the order of presentation. Every multi-plaintiff action presents this challenge, and that circumstance alone therefore simply cannot constitute legal prejudice, apart from some special circumstance which has not been shown here. It is the duty of the trial court to organize and administer the trial in a manner which properly protects the rights of all in this case.
Any prejudice alleged, if there be any, would be obviated by a provision for separate juries to hear the proof and determine the separate matters, if required. See Aikman v. Atex, Inc. 224 A.D.2d 180, 637 N.Y.S.2d 123 [1st 1996], in which four separate juries were utilized. The proper trial of these cases may require three separate juries and will certainly require two separate trials: the first to hear the inquest on damages regarding Fox, the second all the indemnification matters. Liability vis a vis Fox has been determined, and his claim in no way depends upon the evaluation of the causes of the collapse. His damages should be assessed by a jury hearing only that issue. The third party claims in Action 2, and Action 3, both require a full trial on responsibility for the collapse and that will occur in the second of the two trials. The issues relevant to such responsibility should be tried once. The issue of whether one or two juries will hear Actions 2 and 3 can and will be determined after the note of issue has been filed.
Much of the State's argument against joint trial is premised on the supposition that the one or two juries hearing the indemnification cases would be unable to understand why the parties have different obligations of pleading and proof and unable to answer the specific questions of their jury sheets. The State repeatedly points to the fact that it is not a defendant in Action 2 and that its liability will therefore not be before the jury in that matter.
In fact, however, it is entirely possible that the State's conduct will be before any jury which hears Action 2, whether Action 2 is tried separately or consolidated with Action 3. The matter of the relevance of the State's culpability in Action 2 is not here decided, but M.J. Engineering asserts that the State's culpability will be argued by the defendants in Action 2 for a finding against the non-party State under Article 16 of the CPLR, whether or not there is a joint [*5]trial. There is support for that position: see Duffy v. County of Chautauqua 225 A.D.2d 261, 649 N.Y.S.2d 297 [4th 1996]; Rezucha v. Garlock Mechanical Packing Co., 159 Misc.2d 855, 606 N.Y.S.2d 969 [Sup.Ct.Broome Co.1993]. In accord: Prof. Siegel's Commentary, McKinney's CPLR § 1601 (1601.3). While not presently deciding the issue of the relevance of the State's culpability in Action 2, the argument has sufficient facial credibility to defer the State's present protests of prejudice to the time of the filing of the note of issue.
It is significant that not only does M.J. Engineering and Land Surveying argue for a consolidated trial with one jury, but all of the parties in Actions 2 and 3, except the State, favor consolidation and/or joinder.
Judicial economy must by definition include elemental fairness to and consideration for the numerous non-parties who will testify to these events and consequently requires that these cases be tried together. Any alleged or perceived prejudice to the State can, if required, be dealt with by the proof being heard by two separately instructed juries, utilizing two separate verdict sheets, to deal with the different apportionments required. This would be true judicial economy, which includes the limitation of repeat testimony by fact witnesses, including emergency personnel.
With liability pendente lite in the Court of Claims actions, the State of New York commenced Action 3 even though the damages for which it seeks indemnification are presently contingent and speculative. The State argues that the reason it commenced Action 3 is to advance the litigation in a timely manner and preserve evidence. However, the State also argues ". . . the State of New York would not proceed forward with their indemnification against these parties unless and until liability was established against the State of New York". The State argues that since its indemnification claim is, in effect, "unripe", it should not be required to proceed with the expedition which would be required were it joined with the other actions. Having commenced its action, the State must nevertheless be presumed ready to proceed expeditiously, consistent with the rules requiring that this, and all matters, be brought promptly to trial. While it may not wish to "proceed forward" with its action now, it sued the case, and there is no rule permitting it to now "proceed backward" to the state of limbo in which its claim would have lain had it not chosen to bring an action. There can be no "prejudice" in requiring a litigant to proceed with the claim it brought.
Mindful of the foregoing, the only remaining issue is that of the place where the joint trial should be held. Padella v. Greyhound Lines, Inc., 29 A.D.2d 495, 288 N.Y.S.2d 641 [1st 1968] outlines that and, in this case, why the county where the earliest action was commenced should be the county of joint trial:

It is the general rule that in the proper exercise of discretion, the venue of the action first commenced should be fixed as such place of trial in the absence of proof of circumstances requiring otherwise. [citations omitted] There is nothing in this record which would warrant disregarding this rule. Onondaga County is not only the venue of the action first commenced but the courthouse therein is within 35 miles of the place of the accident. The record [*6]establishes other circumstances which favor the designation of Onondaga County as the place of trial: (1) A much earlier trial in regular order can be had in Onondaga than in New York County. This is always a factor to be considered. . . . . (2) All of the injured plaintiffs- respondents who survived the accident were examined and treated in hospitals near the place of the accident. (3) The police officers who investigated the accident at the site thereof shortly after it occurred are stationed and their reports are filed in the police substation which is only 35 miles from the courthouse in Onondaga County. (4) The only known non- party eyewitnesses to the accident, three in number, reside in Monroe and Erie Counties, less than one-half the distance from Onondaga as from New York. . . . Respondents do not deny the existence of any of these circumstances, but contend that the convenience of the police officers and the three non-party eyewitnesses should not be considered because the materiality of their testimony has not been demonstrated in the manner and to the extent required on a motion for a change of venue. This, however, is not a motion for a change of venue. It is a motion for either a consolidation or joint trial, without suggesting or specifying the county to be designated or specified as the place of trial thereof. Greyhound cross-moves to fix the place of trial in Onondaga County, and any order entered on the application of necessity is required to fix such place of trial. The rule was broadly stated in Smith v. Witteman Co., Inc., supra: 'The court has the power, in an appropriate case, to order a consolidation or a joint trial of actions pending in two counties and to direct the trial to be held in one of the counties, thus incidentally changing the venue of the actions pending in the other county, without necessarily requiring a showing of circumstances which would have independently justified the change of venue.'
Padella, supra, is cited at such length because virtually the same situation obtains here: the accident occurred in Marcy, New York, less than ten miles from the Oneida County Courthouse. Exhibit I to the moving papers includes the supporting depositions of sixteen witnesses, all but one of whom live within a half hour's drive of the Oneida County Courthouse, and in most cases within 15 minutes. The remaining one witness lives about an hour from the courthouse in a direction away from Albany. These supporting depositions were taken by local state troopers, whose convenience would also be served by a trial in Oneida County. Furthermore, the claimants in the Court of Claims cases, identified in Exhibit H, are likewise all located far more conveniently to Utica than to Albany, and all of them were of course witnesses to the event. True judicial economy must include trying a case in a location convenient to the potentially dozens of fact witnesses lay people for whom these trials will be further tribulations and whose interests must be considered. In this case the Courthouse in Oneida County, the situs [*7]of the event, is within a few miles of the homes of the overwhelming number of these witnesses.
The factors favoring joint trial are compelling, and any and all identified prejudice can be mitigated. Accordingly, the actions are joined for trial in Oneida County. The motions for consolidation of the actions are denied. The question of whether the trial of Actions 2 and 3 will be before one or two juries will be determined upon further application at the time of the filing of the note of issue.
Cross-movant Tioga is directed to submit an order, on notice, consistent with this decision.
Utica, N.Y. _____________, 2004
Robert F. Julian, J.S.C.
Decision Date: January 09, 2004
Footnotes

Footnote 1:The Court notes that the State has not sued for the direct damages sustained by it as a result of the collapse of its bridge. It would be abusive of the fact witnesses to be required to testify at yet another trial. The State runs significant legal risk by not including all its causes of action in this litigation. See Smith v. Russell Sage College 54 N.Y.2d 185, 445 N.Y.S.2d 68, 429 N.E.2d 746 [1981].