[649 NYS2d 297]

LINDA DUFFY, as Administratrix of the Estate of JOHN P. DUFFY, Deceased, Respondent, v COUNTY OF CHAUTAUQUA, Appellant and Third-Party Plaintiff. STEVEN NICHOLS et al., Third-Party Defendants-Appellants, et al., Third-Party Defendant. (Appeal No. 4.)

Fourth Department, November 8, 1996

## APPEARANCES OF COUNSEL

*Brautigam & Brautigam, L. L. P.,* Fredonia *(Daryl P. Brautigam* of counsel), for appellant and third-party plaintiff.

*Paul William Beltz, P. C.,* Buffalo *(Russell T. Quinlan* of counsel; *Anne B. Rimmler* on the brief), for respondent.

## OPINION OF THE COURT

BOEHM, J.

Defendant County of Chautauqua (County) appeals and third-party defendants G & J Construction Corporation (G & J) and Steven Nichols (Nichols) cross-appeal from judgments in favor of plaintiffs William Stuart (Stuart) and his wife, James Evans (Evans) and his wife, and Linda Duffy, as administratrix of the estate of John Duffy (Duffy) (appeals Nos. 1, 2 and 4). The judgments were entered upon a jury verdict awarding damages for injuries sustained by Stuart, Evans and the estate and next of kin of Duffy, deceased, as the result of the collapse of a bridge in the Town of Hanover (Town), Chautauqua County. The County also appeals from a judgment awarding it damages against G & J and Nichols for the collapse of the bridge (appeal No. 3). The County has failed, however, to brief that issue

and the issue is, therefore, deemed abandoned (*see, Ciesinski v Town of Aurora,* 202 AD2d 984).

We have previously affirmed an order denying the motion of the County for summary judgment dismissing the actions against it (*Duffy v County of Chautauqua,* 206 AD2d 830).

# I

On November 14, 1986, Nichols, President and principal of G & J, drove a crane weighing approximately 16 tons over a one-lane bridge located in the Town. The bridge was built in 1905 by the Town and taken over by the County in 1932. Duffy, an employee of G & J, followed Nichols onto the bridge in a pickup truck hauling a welder. Stuart and Evans, also employees of G & J, were passengers in the pickup truck, which weighed approximately four to five tons. The bridge collapsed while both vehicles were on it. The crane made it safely to the other side, but the pickup truck fell into a ravine, killing Duffy and injuring Stuart and Evans.

In 1979 a State inspection revealed deterioration in the bridge's timber deck. In 1980 the County's inspection of the bridge also revealed deterioration of the timber deck. In 1981 the County replaced the bridge's timber deck with a steel and asphalt deck. According to the testimony of plaintiffs' experts, the 1981 redecking reduced the load-bearing capacity of the bridge to no more than two to three tons and resulted in a 151% increase in the deadload. One expert testified that the load-bearing capacity of the bridge became negative after the redecking, i.e., it was overloaded from dead weight even without traffic on it. No studies were conducted at the time of the redecking to determine whether the bridge could safely support the added weight of the deck. In 1983 the State inspected the bridge and gave it a rating of 3, which is defined in the New York State Bridge Inspection Manual as a bridge needing major structural repair. The inspections and analyses of the bridge were conducted under the assumption that the bridge was constructed of "ductile" metal, but the bridge contained a substantial amount of "brittle metal", a rarely employed form of steel that was used in the construction of the bridge.

Thereafter, the County reduced the posted limit on the bridge from 12 to 8 tons and closed the bridge in the winter because County snowplows were too heavy to traverse it. The County also initiated necessary steps to obtain Federal funding to build a new bridge. At the time of the accident there were

two signs indicating the eight-ton limit on the bridge, one advisory sign located 100 feet before the bridge and one regulatory sign on the edge of the bridge itself.

At trial, the various experts differed on the question whether the County could have or should have anticipated the presence of brittle metal in the bridge, but all agreed that the bridge collapsed because it was overloaded and that the reduction of the bridge's load-bearing capacity was caused by the redecking of the bridge.

The trial was bifurcated, and the issues of liability and damages were tried before the same jury. In its verdict on liability, the jury found the County 25% liable and G & J and/or Nichols, as third-party defendants, 75% liable. After the trial on damages, Evans was awarded $571,883 for medical expenses, loss of earnings, and past and future pain and suffering, and his wife, Marilyn, was awarded $25,000 on her derivative cause of action; Stuart was awarded $168,700 for medical expenses, loss of earnings, and past and future pain and suffering, and his wife, Heather, was awarded $15,000 on her derivative cause of action; Linda Duffy, as administratrix of the estate of John P. Duffy, was awarded a gross verdict of $3,583,871 for the conscious pain and suffering of Duffy, the past and future economic loss of his next of kin, and his funeral expenses.

## II

█ Supreme Court properly denied the request of G & J, Nichols and the County that the jury be charged regarding the contributory negligence of Stuart and Evans. The determination of contributory negligence is "almost always * * * a question of fact" (*Wartels v County Asphalt,* 29 NY2d 372, 379) and is for the jury to determine "in all but the clearest cases" (*MacDowall v Koehring Basic Constr. Equip.,* 49 NY2d 824, 827; *see, Gudenzi-Ruess v Custom Envtl. Sys.,* 212 AD2d 952; *Cincotta v Johnson,* 130 AD2d 539; *Williams v City of New York,* 101 AD2d 835). Where there is nothing in the record, however, that would support a finding of a party's negligence, that issue may be determined as a matter of law (*see, Luck v Tellier,* 222 AD2d 783). There is no evidence that either Stuart or Evans had knowledge of the weight limitation of the bridge or saw the weight limitation signs. Although the operator of a motor vehicle has a "duty to see that which under the facts and circumstances [he] should have seen by the proper use of [his] senses", i.e., the eight-ton weight restriction signs (PJI 2:77.1 [1996 Supp]), a passenger has no such obligation (*see, Petryszyn v Di Fulvio,* 185 AD2d 405).

The court erred, however, in denying the request to charge the jury regarding the contributory negligence of Duffy in his estate's action. The jury could reasonably infer that Duffy, an employee of G & J, must have known that the weight of the crane was well in excess of eight tons and that he should not drive onto the bridge at the same time as the crane. That knowledge, combined with the duty of Duffy as the driver of the truck to see what was there to be seen, including the road signs, necessitated that the issue of his contributory negligence be submitted to the jury (*see, MacDowall v Koehring Basic Constr. Equip., supra,* at 826; PJI 2:77.1 [1996 Supp]; *see generally, Weigand v United Traction Co.,* 221 NY 39).

### III

The court properly denied, however, the requests of G & J, Nichols and the County that the jury consider Duffy's negligence in apportioning their liability under CPLR 1601. "Under CPLR article 16, a joint tortfeasor whose culpability is 50% or less is not jointly liable for all of plaintiff's noneconomic damages, but severally liable for its proportionate share (CPLR 1601 [1])" (*Sommer v Federal Signal Corp.,* 79 NY2d 540, 554). But article 16 also provides "that the culpable conduct of any person not a party to the action shall not be considered in determining any equitable share herein if the claimant proves that with due diligence he or she was unable to obtain jurisdiction over such person in said action" (CPLR 1601 [1]).

Duffy is not a party in either the Stuart or Evans actions because the County discontinued its third-party actions against him. Notwithstanding the absence of Duffy as a party, his fault would ordinarily be considered for apportionment purposes under CPLR 1601. Although Stuart and Evans were barred from suing Duffy under the fellow servant rule (Workers' Compensation Law §§ 11, 29 [6]), the statutory bar of the Workers' Compensation Law does not constitute the inability to obtain jurisdiction as intended by CPLR 1601 (*see, Rezucha v Garlock Mech. Packing Co.,* 159 Misc 2d 855, 860; Alexander, 1994 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 7B, 1996 Pocket Part, CPLR C1601:2; *see also, People ex rel. Swift v Luce,* 204 NY 478, 487).

In *Rezucha v Garlock Mech. Packing Co. (supra,* at 860), Supreme Court permitted defendants to prove the State's share of culpability pursuant to CPLR 1601 in spite of the fact that the State was immune from suit in Supreme Court. The court held that "the State's immunity from suit is better viewed as a

limitation on the subject matter jurisdiction of the Supreme Court rather than as a restriction on plaintiff's ability to make service and obtain personal jurisdiction under CPLR 301" (*Rezucha v Garlock Mech. Packing Co., supra,* at 860). In McKinney's Supplementary Practice Commentaries, Vincent Alexander comments that the *Rezucha* court reached the proper result, adding that further support for the result is "that a plaintiff's inability to sue the State in Supreme Court is not a jurisdictional limitation at all, but rather is the result of a rule of substantive law based on the doctrine of sovereign immunity" (Alexander, 1994 Supp Practice Commentary, *op. cit.,* at 223; *see also, People ex rel. Swift v Luce, supra,* at 487 ["The Supreme Court had not jurisdiction solely because of the immunity of the [State] from suit, not because it did not have jurisdiction of such a cause of action"]). And in his article, *The New Law Partially Abolishing the Joint Liability Rule in Tort Cases—Part I* (322 NY St L Dig 1, 3 [Oct. 1986]), Professor David Siegel suggests that the feature that precludes consideration of a nonparty's culpability under CPLR 1601 is the lack of personal, rather than subject matter, jurisdiction. The only cases to the contrary appear to be Federal cases. For instance, in *In re Brooklyn Navy Yard Asbestos Litig.* (971 F2d 831, 846 [2d Cir 1992]), the Second Circuit held that, because the automatic stay provisions in bankruptcy precluded processing a claim against bankrupt tortfeasors, CPLR 1601 does not apply where they are parties (*see also, In re Joint E. & S. Dists. Asbestos Litig.,* 878 F Supp 473, 544 [ED NY, SD NY 1995], *affd* 100 F3d 944).

The term "jurisdiction" in CPLR 1601 (1), therefore, refers to personal rather than to subject matter jurisdiction. But Stuart and Evans did not show that they were unable to obtain personal jurisdiction of Duffy by serving a representative of his estate (*see,* EPTL 11-3.2 [a] [1]). Therefore, Duffy's negligence, if any, would ordinarily be a factor in apportioning liability.

Nevertheless, such apportionment is not applicable here because of various exemptions found in CPLR 1602. CPLR 1602 (6) provides that article 16 does not apply to "any person held liable by reason of his use, operation, or ownership of a motor vehicle". The question of the liability of Duffy would arise solely by reason of his operation of the pickup truck, removing him from the reach of article 16. CPLR 1602 (4) also provides that article 16 does not apply "to a claim against a defendant where such defendant has impleaded a third party against whom the claimant is barred from asserting a cause of action

because of the applicability of the workers' compensation law, to the extent of the equitable share of said third party." The County impleaded G & J and Nichols in its third-party actions. Plaintiffs are barred, however, from asserting a cause of action against Nichols, the fellow servant of Duffy, Stuart and Evans, or G & J, their employer, because "of the applicability of the workers' compensation law." Thus, article 16 does not apply for that reason, as well.

■ Nor is contribution from Duffy available to the County, G & J or Nichols in the Stuart and Evans actions. CPLR 1403 provides that "[a] cause of action for contribution may be asserted in a separate action or by cross-claim, counterclaim or third-party claim in a pending action." The County sought only indemnification from Duffy in the Stuart and Evans actions; it did not seek contribution. G & J and Nichols sought contribution from the County only in their cross claim against the County; they did not look to Duffy for contribution.

## IV

■ G & J and Nichols contend that the same jury that decided liability should not have determined damages because of a comment by Stuart's counsel to a juror after the liability phase of the trial. Initially, that issue has not been preserved for our review. Although counsel for G & J and Nichols and counsel for the County made a record of what occurred, they neither moved for a mistrial nor objected in any formal sense (*see, Healy v Greco,* 174 AD2d 877; *Polimeni v Bubka,* 161 AD2d 568). In any event, their contention lacks merit.

Immediately after the jury returned its verdict in the liability phase of the trial, the court discharged the jurors and advised them that they could speak to the lawyers if they wished. After the jury had left the courtroom, counsel for the County informed the court that Stuart's counsel was asked by one of the jurors if G & J was still in business. Stuart's counsel responded, "[A]s far as I know they are still in business." That was the extent of any communication with the juror.

The parties have erroneously analyzed this issue as juror misconduct. There was no juror misconduct because, after the jurors were inadvertently discharged, they were advised by the court that they were free to speak with counsel.

In any event, the communication with the juror is not fatal to the damages verdicts. Although the juror apparently expressed relief that G & J was still in business, counsel's response to the juror's question was made after the jury had al-

ready completed its consideration of liability. Further, before the trial on damages commenced, the court instructed the jury that "whether or not G & J is still in business or not in business has absolutely nothing to do with your determination. It isn't to be considered by you one way or another. And we're not even going to tell you whether they are or are not because it has nothing to do with your determinations." The mistake was quickly rectified and did not result in such prejudice as to require a new trial (*see generally,* 10 Carmody-Wait 2d, NY Prac § 70:100). In an analogous situation, where a jury was inadvertently informed that defendant had insurance, an isolated reference to such coverage did not require reversal (*see, Rush v Sears, Roebuck & Co.,* 92 AD2d 1072, 1073). In view of the isolated and innocuous nature of the comment here and the court's curative instruction, a retrial on damages is not required.

## V

The County failed to preserve for review its contentions that the court erred in refusing to charge Vehicle and Traffic Law § 385 (15) (g) and to consider the County's immunity under *Weiss v Fote* (7 NY2d 579, *rearg denied* 8 NY2d 934). Those instructions were not requested before the jury retired to consider the verdict (*see,* CPLR 4110-b). Were we to reach those issues, we would conclude that they lack merit.

## VI

We have considered the remaining contentions of the County, G & J and Nichols and conclude that they lack merit.

Accordingly, the judgment in appeal No. 4 should be reversed and a new trial granted, limited solely to the issue of Duffy's contributory negligence. The judgments in appeals Nos. 1, 2 and 3 should be affirmed.

LAWTON, J. P., WESLEY and DAVIS, JJ., concur.

Judgment unanimously reversed, on the law, without costs, and new trial granted on contributory negligence of John Duffy only.

WILLIAM A. STUART et al., Respondents, v COUNTY OF CHAUTAUQUA, Appellant and Third-Party Plaintiff. STEVEN NICHOLS et al., Third-Party Defendants-Appellants, et al., Third-Party Defendant. (Appeal No. 1.) [649 NYS2d 891] —Judgment unanimously affirmed, without costs. Same opinion by Boehm, J., as in *Duffy v County of Chautauqua* ([appeal No. 4], 225

AD2d 261 [decided herewith]). (Appeals from judgment of Supreme Court, Chautauqua County, Notaro, J.—Negligence.) Present—LAWTON, J. P., WESLEY, DAVIS and BOEHM, JJ.

JAMES EVANS et al., Respondents, v COUNTY OF CHAUTAUQUA, Appellant and Third-Party Plaintiff. STEVEN NICHOLS et al., Third-Party Defendants-Appellants, et al., Third-Party Defendant. (Appeal No. 2.) [649 NYS2d 892] —Judgment unanimously affirmed, without costs. Same opinion by Boehm, J., as in *Duffy v County of Chautauqua* ([appeal No. 4], 225 AD2d 261 [decided herewith]). (Appeals from judgment of Supreme Court, Chautauqua County, Notaro, J.—Negligence.) Present—LAWTON, J. P., WESLEY, DAVIS and BOEHM, JJ.

LINDA DUFFY, as Administratrix of the Estate of JOHN P. DUFFY, Deceased, et al., Plaintiffs, v COUNTY OF CHAUTAUQUA, Defendant and Third-Party Plaintiff-Appellant. STEVEN NICHOLAS et al., Third-Party Defendants-Respondents, et al., Third-Party Defendant. (Appeal No. 3.) [649 NYS2d 892] —Judgment unanimously affirmed, without costs. Same opinion by Boehm, J., as in *Duffy v County of Chautauqua* ([appeal No. 4], 225 AD2d 261 [decided herewith]). (Appeal from judgment of Supreme Court, Chautauqua County, Notaro, J.—Indemnification.) Present—LAWTON, J. P., WESLEY, DAVIS and BOEHM, JJ.