■ ALPHONSO DIAZ, Respondent, v WALLY VASQUES et al., Defendants, and YONKERS CONTRACTING COMPANY, Appellant. (And Another Action.) RICARDO BOGGIO, Individually and as Administrator of the Estate of LIZ BOGGIO, Deceased, Respondent, v YONKERS CONTRACTING COMPANY, Appellant. (And Other Actions.) ALEXANDRA JANCESKI, Respondent, v WALLY VASQUES et al., Defendants, and YONKERS CONTRACTING COMPANY, Appellant. [793 NYS2d 27]—

Order, Supreme Court, New York County (Milton A. Tingling, J.), entered June 9, 2004, which, in personal injury and wrongful death actions consolidated for joint trial, denied defendant Yonkers Contracting Company's motion for summary judgment dismissing each plaintiff's complaint and all cross claims as against it, unanimously reversed, on the law, without costs, the motion granted and the complaints and cross claims dismissed as against Yonkers Contracting Company. The Clerk is directed to enter judgment accordingly.

On October 20, 1998 at approximately 6:30 A.M., plaintiffs Alphonso Diaz and Alexandra Janceski and plaintiff Boggio's decedent, Liz Boggio, were passengers in a car driven by defendant Vasques that was traveling north on a section of the West Side Highway that was undergoing extensive renovation as part of stage I (A) of the State Department of Transportation's (DOT) West Side Highway Renovation Project, for which defendant Yonkers Contracting was the general contractor. Plaintiffs contend that because of Yonkers' negligence in failing to install an impact attenuator Mr. Diaz and Ms. Janceski suffered severe injuries and Ms. Boggio died when their car went out of control

and hit the cement base of a temporary traffic light placed in the central divider at the intersection of 12th Avenue and West 52nd Street. Although the undisputed evidence establishes that the accident occurred when defendant Vasques fell asleep at the wheel and lost control of the vehicle, plaintiffs argue that it was Yonkers' responsibility to ensure public safety, and that issues of fact exist as to whether Yonkers followed the relevant state procedures, contract documentation and industry standards for maintaining the area.

It is well settled that a " 'contractor is justified in relying upon the plans and specifications which he has contracted to follow unless they are so apparently defective that an ordinary builder of ordinary prudence would be put upon notice that the work was dangerous and likely to cause injury' " (*Cortez v Sladon Iron Works Co.*, 214 App Div 404, 407 [1925], quoting *Ryan v Feeney & Sheehan Bldg. Co.*, 239 NY 43, 46 [1924]).

In support of its motion for summary judgment, Yonkers asserted that all the evidence in the record demonstrates that it was following the plans and specifications as required by its contract with DOT; that all safety devices required and the locations at which they were to be used were specifically set forth in them; that it was justified in relying on such plans and specifications which were prepared and designed by DOT; that it had no authority to deviate from such plans and specifications without express written approval from DOT; that it fully complied with and adhered to the plans and specifications at all times; and that it was not its responsibility to selectively dictate the use of attenuators on the project since the positioning of attenuators was within DOT's sole control.

In opposition, plaintiffs failed to show that DOT's plans for the project were so apparently defective that Yonkers was put on notice of the inherent danger. Furthermore, plaintiffs' expert failed to address whether Yonkers violated any plans or specifications specified in its contract with DOT or whether the plans or any actions taken by Yonkers created an inherently dangerous condition, or whether any other safety devices were required. Instead, his affidavit focused on the removal of the cement concrete foundation for the temporary traffic light and the installation of reflective orange plastic construction barrels with flashing lights which, according to him, would provide a safety buffer zone for northbound vehicles, particularly during hours of darkness. However, he admitted that DOT's plans did not call for the removal of the concrete foundation until stage I (B) of construction, which had not been reached at the time of the accident.

Accordingly, inasmuch as the affidavit of plaintiffs' expert failed to raise any issues of fact as to whether any safety devices were required, or whether Yonkers failed to follow the plans and specifications in its contract with DOT, Yonkers' motion for summary judgment should have been granted. Concur— Andrias, J.P., Saxe, Friedman, Marlow and Nardelli, JJ.