■ YOLANDA BELMER, Respondent, v HHM ASSOCIATES, INC., Appellant, et al., Defendants. [957 NYS2d 16]—

Plaintiff was injured when the tire of a bus she was driving rolled into a large hole in a roadway. Defendant HHM Associates, Inc. had contracted with nonparty City of New York to replace sewer mains along a stretch of roadway that included the site of the accident. HHM's project entailed excavating and restoring the roadway. According to the City's consulting engineer, the roadway had been restored with temporary asphalt when the accident occurred. Plaintiff's theory at trial was that HHM left the hole in the roadway while performing its work. At the charge conference, HHM requested a charge based on the City's nondelegable duty to keep its streets in a reasonably safe condition (*see e.g. Friedman v State of New York*, 67 NY2d 271, 283 [1986]). HHM also submitted a proposed verdict sheet that contained interrogatories as to whether the City was negligent and, if so, whether such negligence was a substantial factor in causing plaintiff's injuries. The proposed verdict sheet also called for an apportionment of culpability among HHM, the City and plaintiff. The trial court declined to instruct the jury

on the City's possible liability and did not reference the City on the verdict sheet that was submitted to the jury. The jury awarded damages for past and future pain and suffering (defined as noneconomic loss under CPLR 1600), lost earnings and medical expenses. In so doing, the jury found HHM and plaintiff to be 77% and 23% culpable, respectively. We reverse.

CPLR 1601 (1) provides that a joint tortfeasor whose culpability is 50% or less is not jointly liable for all of a plaintiff's noneconomic loss but is severally liable for its proportionate share (see *Sommer v Federal Signal Corp.*, 79 NY2d 540, 554 [1992]). Under the statute, the trier of fact must consider the relative culpable conduct of a nonparty in apportioning culpability unless the plaintiff proves that with due diligence she was unable to obtain jurisdiction over the nonparty (see *Duffy v County of Chautauqua*, 225 AD2d 261, 266 [4th Dept 1996], *lv dismissed in part and denied in part* 89 NY2d 980 [1997]). Plaintiff failed to make such a showing. Accordingly, a new trial as set forth above is required to determine the extent of the City's relative culpable conduct, if any.

We also note that plaintiff testified that the hole had been in the roadway for at least a month prior to the accident. Unquestionably, a party's constructive notice of a dangerous condition that was left unremedied constitutes evidence of negligence (see *Gordon v American Museum of Natural History*, 67 NY2d 836, 837 [1986]). We disagree with the argument in Justice Tom's dissent that the record is devoid of evidence of negligence on the City's part. There was evidence of constructive notice on the part of the City. The City is under a nondelegable duty to maintain its streets in a reasonably safe condition (*Thompson v City of New York*, 78 NY2d 682, 684 [1991]). That duty remains fixed even if a dangerous street condition that causes injury is created by an independent contractor such as HHM (*Lopes v Rostad*, 45 NY2d 617, 623 [1978]). In light of the City's nondelegable duty, we are not persuaded by plaintiff's argument that there was no evidence of a failure by the City to exercise reasonable care.

Where pertinent, CPLR 1602 (2) (iv) provides as follows: "The limitations set forth in this article shall . . . not be construed to impair, alter, limit, modify, enlarge, abrogate or restrict . . . any liability arising by reason of a non-delegable duty . . . ." In *Rangolan v County of Nassau* (96 NY2d 42, 45 [2001]), the Court of Appeals explained that CPLR 1602 (2) (iv), quoted above, does not preclude apportionment when a defendant's liability arises from a nondelegable duty; the subdivision is a savings provision and not an exception to apportionment under

CPLR article 16 (*see Frank v Meadowlakes Dev. Corp.*, 6 NY3d 687, 693 [2006]). We, therefore, respectfully disagree with Justice Tom's dissent insofar as it posits that "the statutory language [of article 16] clearly indicates that the legislature did not intend apportionment to be predicated on obligations that are . . . nondelegable." To be sure, the *Rangolan* Court held that "a municipality that delegates a duty for which the municipality is legally responsible, such as the maintenance of its roads, to an independent contractor *remains vicariously liable for the contractor's negligence,* and cannot rely on CPLR 1601 (1) to apportion liability between itself and its contractor" (*Rangolan*, 96 NY2d at 47 [emphasis added], citing *Faragiano v Town of Concord*, 96 NY2d 776 [2001]). However, the fundamental difference here is that HHM, like any other agent, is not responsible to third parties for the tortious acts of its principal, the City (*see Rusyniak v Gensini*, 629 F Supp 2d 203, 222 and n 41 [ND NY 2009]; *Dorkin v American Express Co.*, 74 Misc 2d 673, 674 [Sup Ct, Albany County 1973], *affd* 43 AD2d 877 [3d Dept 1974]). *Rangolan* stands for the proposition that CPLR 1602 (2) (iv) does not preclude a party, such as HHM, from seeking apportionment between itself "and other tortfeasors for whose liability [it] is not answerable" (96 NY2d at 47 [internal quotation marks omitted]).

We also disagree with Justice Tom's dissent to the extent it is based on the apparent premise that a municipality's breach of its nondelegable duty cannot give rise to culpable conduct within the meaning of CPLR 1601. Within the analogous context of CPLR article 14-A, the Court of Appeals has defined "culpable conduct" as "conduct which, for whatever reason, the law deems blameworthy" (*Arbegast v Board of Educ. of S. New Berlin Cent. School*, 65 NY2d 161, 168 [1985]). The term embraces "any breach of legal duty or fault by the defendant, including but not limited to negligence in any degree, breach of warranty, strict liability and violation of a statutory duty" (*Lippes v Atlantic Bank of N.Y.*, 69 AD2d 127, 137 [1st Dept 1979] [internal quotation marks and emphasis omitted]).

Also, although discussed in Justice Tom's dissent, the prior written notice law (Administrative Code of City of NY § 7-201 [c] [2]) does not bear upon HHM's right to have a jury determine the City's relative culpability under CPLR 1601. By its own terms, the prior written notice law is limited in application to actions "maintained against the city" (*id.*). The prior written notice law is therefore inapplicable here because the City is not a party to this action. Prior written notice provisions are always strictly construed because they are enacted in derogation of

common law (*Poirier v City of Schenectady*, 85 NY2d 310, 313 [1995]).

Citing *Diaz v Vasques* (17 AD3d 134 [1st Dept 2005], *lv denied sub nom. Boggio v Yonkers Contr. Co.*, 5 NY3d 706 [2005]), HHM also argues that it had no duty to plaintiff because its work was performed pursuant to the City's contract specifications and approved by its engineers (*see generally Espinal v Melville Snow Contrs.*, 98 NY2d 136 [2002]). Here, HHM relies on the consulting engineer's testimony that he approved the work as being performed according to specifications. The contract, however, defined "final acceptance" as the issuance of a certificate of completion and acceptance signed by the Commissioner of the Department of Design and Construction. The record contains no evidence that such a certificate was issued. Moreover, the contract further provided that the engineer's inspection and approval of the work did not relieve HHM of its obligation to perform according to the contract. Therefore, HHM did not conclusively establish that it performed its work pursuant to the contract specifications. We also respectfully disagree with Justice Catterson's dissent insofar as it suggests that holding HHM to the "final acceptance" provisions of its contract "elevates form over substance." On the contrary, we look to the actual words of a contract so that form does *not* swallow substance (*see Sutton v East Riv. Sav. Bank*, 55 NY2d 550, 555 [1982]). In this case, HHM should not be heard to invoke its contract as a shelter against liability while, at the same time, seeking to avoid the plain meaning of its provisions.

The court properly permitted plaintiff's vocational economic analyst to testify about plaintiff's lost fringe benefits even though her union's collective bargaining agreement was not in evidence. An expert's opinion must generally be based on facts in the record or personally known to the witness (*Hambsch v New York City Tr. Auth.*, 63 NY2d 723, 725 [1984]). Nevertheless, an expert may rely on out-of-court material that is "accepted in the profession as reliable in forming a professional opinion" (*id.* at 726 [internal quotation marks omitted]). HHM's objections to the expert's opinion were refuted by the fact that its own vocational expert also based his opinion, in part, on the collective bargaining agreement (*see e.g. Greene v Xerox Corp.*, 244 AD2d 877, 878 [4th Dept 1997], *lv denied* 91 NY2d 809 [1998]).

We have considered HHM's remaining contentions and find them unavailing. Concur—DeGrasse, Richter and Manzanet-Daniels, JJ.

Tom, J.P., dissents in a memorandum as follows: Plaintiff al-

leges that she sustained injury to her back on December 5, 2001 while operating a New York City Transit Authority bus along Atlantic Avenue in Brooklyn. According to her trial testimony, as she approached the intersection with Nevins Street, traveling at five to seven miles an hour, she was forced to veer to the right by a car that suddenly pulled out in front of her. As a result, the left front tire of the vehicle struck a round construction hole perhaps two feet wide and 12 to 18 inches deep that was situated next to a manhole cover. Plaintiff had observed the hole regularly for over a month and previously avoided it by driving over it between the front wheels of the bus. The action proceeded to trial against HHM, which performed the road work along Atlantic Avenue under contract with the City of New York.

HHM's president testified that the company had resurfaced the area with temporary pavement on October 1, 2001, returning to connect a small pipe to a manhole on October 25, after which the excavation was backfilled and the road restored with temporary asphalt. Operations were suspended due to the holiday season, and no other work was performed until January 2002.

After the jury returned a verdict in plaintiff's favor, the parties submitted posttrial motions. The court granted plaintiff's motion to modify damages to the extent of adding an award of $22,000 for past medical expenses, bringing the total amount awarded to $1,697,174. The court denied HHM's motion to set aside the verdict, which asserted (1) that HHM owed plaintiff no duty of care, (2) that the awards for future lost earnings and medical expenses were speculative, and (3) that such awards were against the weight of the evidence. The trial court expressly noted that it had twice rejected HHM's position, advanced in motions interposed before and during trial, that it should not be held liable because maintenance of the streets is a nondelegable duty of the City.

On appeal, HHM contends that the trial court erred in denying its motion. Its primary contention is that the contractual duty it assumed for the City of New York does not extend to a third party, such as plaintiff, who was not an intended beneficiary of the contractual undertaking, and that the court erred in failing to instruct the jury to apportion fault as against the City. HHM contends that its acts, performed as a city contractor engaged to make street repairs, must be imputed to the municipality and maintains that its activities did not create any hazardous condition for which liability might be assigned. HHM further argues that the jury finding of permanent disability is

not supported by sufficient evidence and that the jury's determination of this question, as well as liability and causation in general, are against the weight of the evidence. Finally, HHM claims to have been prejudiced by plaintiff's summation, in which counsel was permitted to read from HHM's contract with the City.

HHM is correct that, as a general principle, a duty undertaken as a contractual obligation does not extend to third parties (*see Eaves Brooks Costume Co. v Y.B.H. Realty Corp.*, 76 NY2d 220, 226 [1990]). However, the law recognizes situations in which a duty of care is imposed on a party to a contract to provide services, which include, as pertinent here, where that party has "launche[d] a force or instrument of harm" (*Espinal v Melville Snow Contrs.*, 98 NY2d 136, 140 [2002], quoting *Moch Co. v Rensselaer Water Co.*, 247 NY 160, 168 [1928]) by creating or exacerbating a dangerous condition (*Espinal*, 98 NY2d at 141-142).

The resolution of disputed facts is within the province of the jury, as is causation generally (*Windisch v Weiman*, 161 AD2d 433, 437 [1st Dept 1990], citing *Kallenberg v Beth Israel Hosp.*, 45 AD2d 177, 180 [1st Dept 1974], *affd* 37 NY2d 719 [1975], and *O'Connell v Albany Med. Ctr. Hosp.*, 101 AD2d 637, 638 [3d Dept 1984]). On this record, the jury was at liberty to credit plaintiff's testimony that there was a substantial hole in the road surface, a dangerous condition, created by HHM in the course of its work on the sewer mains approximately six weeks before the accident, which defect was readily observable to plaintiff.

It is suggested that the complaint should be dismissed as against HHM because the City of New York, as the party charged with a nondelegable duty to maintain the streets in a safe condition, is wholly liable for the defect that caused plaintiff's injury. If this were the case, the City or any other party under a nondelegable duty would be unable to limit its liability in accordance with its relative culpability (CPLR 1601), a proposition which the Court of Appeals has rejected. In *Rangolan v County of Nassau* (96 NY2d 42 [2001]), the county was sued by a plaintiff who, while incarcerated, sustained injury in an assault by a fellow inmate. The trial court denied the county's request for an instruction as to apportionment against the assailant, concluding that CPLR 1602 (2) (iv) renders apportionment unavailable where liability arises due to the breach of a nondelegable duty (*id.* at 45). The Court of Appeals disagreed, noting that it would be anomalous to read that provision of the CPLR as an exception to the availability of apportion-

ment to "municipalities, landowners and employers, who often owe a non-delegable duty or are vicariously liable for their agents' actions[,] [as] these are precisely the entities that article 16 was designed to protect" (*Rangolan*, 96 NY2d at 48).

It is further proposed that HHM must be permitted to seek apportionment against the City under CPLR 1601 on the basis of the municipality's nondelegable duty to maintain the roadway. HHM assigns error to the trial court's refusal to instruct the jury that it must determine the extent of the City's liability as a nonparty tortfeasor, arguing that a new trial is required to assess the City's relative culpability.

While it has been remarked that CPLR article 16 eludes expeditious interpretation (*see Chianese v Meier*, 98 NY2d 270, 275 [2002]), the statutory language clearly indicates that the legislature did not intend apportionment to be predicated on obligations that are vicarious or nondelegable. Article 16, in limiting the defendant's liability for the plaintiff's noneconomic loss to the defendant's equitable share, provides that the defendant's share shall be "determined in accordance with the relative *culpability* of each person *causing or contributing* to the total liability for non-economic loss" (CPLR 1601 [1] [emphasis added]). Culpability denotes guilt or blameworthiness, not simply liability incurred irrespective of causation. The language utilized indicates the intent to subject to apportionment those parties that are responsible for actually causing harm. Because HHM does not attempt to establish the City's culpable conduct in causing or contributing to the injury sustained by plaintiff but relies solely on the municipality's nondelegable duty to maintain the streets, HHM has not demonstrated that it is entitled to seek apportionment against the City under CPLR 1601. The majority's position is flawed in that it cites to legal principles that have no application to this case. The majority states that "a municipality . . . remains vicariously liable for the contractor's negligence" (emphasis omitted). This may be true, but the issue of vicarious liability was never raised in this case. Plaintiff is not seeking to recover damages against the City based on the municipality's vicarious liability as a result of its contractor's negligence (*see Faragiano v Town of Concord*, 96 NY2d 776, 778 [2001]). Thus, the issue of vicarious liability is irrelevant. The majority also states that "HHM . . . is not responsible to third parties for the tortious acts of its principal." Once again, this may be a correct legal principle, however, in the present case the City committed no tortious act. The trial record is devoid of evidence of any negligence on the City's part. Thus, the jury would be asked to speculate on an issue without any supporting proof.

Furthermore, while the contractor is subject to liability to plaintiff for its negligence without condition, the City is only exposed to liability to plaintiff if the notice provisions of the Pothole Law (Administrative Code of City of NY § 7-201 [c] [2]) have been complied with. In denying HHM's request for an instruction as to assessment of liability against nonparty City, the trial court noted that there was "no evidence that there was any notice to the City" (which may well explain why the complaint does not name the City as a defendant). HHM did not contest the court's assessment or address the notice issue, interposing only a general objection to the court's refusal to issue a supplemental instruction concerning the City's nondelegable duty to the public at large to maintain the streets in a safe condition.* This instruction concerns the City's common-law duty of care to plaintiff, not its alleged obligation to apportion damages with HHM. Because it omits the prior notice requirement as a condition of recovery, the trial court did not err in refusing to include it in its jury charge. Furthermore, HHM never requested a jury charge of apportionment of fault as against the City in either its initial or supplemental charge request. HHM's exception to the charge concerns only the court's failure to give a charge concerning the City's nondelegable duty to maintain its roads and not the court's failure to provide a charge on apportionment of fault. Thus, HHM has not preserved its present claim that the failure to instruct the jury concerning apportionment constitutes error (*De Long v County of Erie*, 60 NY2d 296, 306 [1983]; *Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 317 [1980]).

Finally, it is settled that the City cannot be held liable for a defect in the street on a theory of constructive notice (*Amabile v City of Buffalo*, 93 NY2d 471, 475-476 [1999] ["constructive notice of a defect may not override the statutory requirement of prior written notice of a sidewalk defect"]). The Pothole Law requires prior written notice of a defective condition as a prerequisite to bringing suit, and the burden rests on the plaintiff to plead and prove that such written notice had been received prior to injury (*see Poirier v City of Schenectady*, 85 NY2d 310, 314 [1995]; *Laing v City of New York*, 71 NY2d 912, 914 [1988]). To permit HHM to seek apportionment pursuant CPLR 1601

---

* The requested instruction states, in substance, that the City owes a nondelegable duty to the public to maintain its streets and to take reasonable precautions to ensure their safety. It directs the jury to assess reasonableness on the basis of whether the City should have anticipated plaintiff's presence at the location where she sustained injury and whether the City had knowledge of the hazard for a sufficient time to have enabled it to remedy the condition.

under the facts of this case would introduce confusion as to the basis of the City's liability to plaintiff and obviate the intent of the Pothole Law to insulate the municipality from liability where no prior written notice of the alleged defect has been received (General Municipal Law § 50-e [4]; *Amabile*, 93 NY2d at 476).

The verdict was not against the weight of the evidence (*see McDermott v Coffee Beanery, Ltd.*, 9 AD3d 195, 206 [1st Dept 2004]). As noted, the jury's determination that there was a dangerous defect in the road resulting from HHM's construction activity has a rational basis in the record. It was within the jury's province to find that plaintiff's release of air from her inflatable seat cushion so as to better reach the pedals was not a proximate cause of her injuries, given the testimony of her safety officer that even with a fully inflated cushion, the driver of a bus going over a deep road defect would be jolted. Although plaintiff's collective bargaining agreement was not in evidence, her economist's valuation of her lost future benefits was properly based on that agreement (*see Hambsch v New York City Tr. Auth.*, 63 NY2d 723, 725-726 [1984]; *Tassone v Mid-Valley Oil Co.*, 5 AD3d 931, 933 [3d Dept 2004], *lv denied* 3 NY3d 608 [2004]). Indeed, HHM's vocational expert partially based his own valuation on the agreement. Further, because we conclude that HHM was under a duty of care, HHM was not prejudiced by opposing counsel's reading of a contract provision placing responsibility for injury on HHM.

Accordingly, the judgment should be affirmed.

Catterson, J., dissents in a memorandum as follows: I must respectfully dissent. In my opinion, there is no reason to remand for a trial to determine "relative culpability" pursuant to CPLR 1601 between nonparty New York City and defendant contractor HHM Associates, Inc. (hereinafter referred to as HHM) because, for the reasons set forth below, the City was entirely liable for the condition of the road. Thus, the judgment against HHM should be vacated.

This appeal arises out of a personal injury action, in which the plaintiff, a New York City Transit Authority bus driver, claimed that she was injured on December 5, 2001 when the front left tire of the bus she was driving struck a "hole" or "uneven pavement" on Atlantic Avenue in Brooklyn. The plaintiff further claimed that the road was improperly repaired by HHM, and that even if HHM did not create the hole, HHM assumed absolute liability for the condition of the road in its contract with the City.

The record reflects that HHM was hired by nonparty City of

New York to replace sewer mains along two miles of road over a three-year period between 2000 and 2003. The contract required that HHM stop work between November 17, 2001 and January 2, 2002 for the holiday season, and backfill any excavations.

HHM's president testified that on October 1, 2001, HHM workmen backfilled a 75-foot excavation along Atlantic Avenue, pursuant to the terms of the contract. On October 25, 2001, HHM returned to the site in order to connect a small pipe to a manhole. HHM's president further testified that the excavation was backfilled, and the road restored with temporary asphalt the following day.

The record also reflects that the City hired an engineering consulting firm to inspect and approve HHM's work. The resident engineer for the project testified that inspectors recorded the work performed by HHM every day to ensure that the work complied with the contract specifications, and, after HHM completed its work, to ensure that the road was safe for traffic during the holiday embargo.

At trial, at the conclusion of the plaintiff's case, HHM moved to dismiss the plaintiff's complaint for failure to establish a prima facie case, and at the close of the evidence, HHM moved for a directed verdict. The court denied the motions. Subsequently, HHM objected to the court's charge to the jury that "a contractor . . . is liable for injury to a person on the street . . . if, as a result of work performed, . . . the street was in a condition dangerous to persons on the street." HHM argued that the charge described a landowner's duty. The court also refused HHM's request to charge the jury that the City has a nondelegable duty to maintain the road. The jury found in favor of the plaintiff and awarded damages in the amount of $1,675,174.*

Subsequently, the plaintiff moved to increase the award for past medical expenses. By order dated October 15, 2009, the motion court granted the plaintiff's motion and denied HHM's cross motion pursuant to CPLR 4404 to set aside the verdict, or, alternatively, for a new trial on liability and damages.

HHM now appeals on the grounds that it had no duty to the

---

* The jury awarded the plaintiff $50,000 for past pain and suffering, and $140,000 for past lost earnings. It awarded $50,000 for 35 years of future pain and suffering, $100,000 for 35 years of future medical expenses, and $1,334,174 for 12.5 years of future lost earnings. However, two months after her discectomy in October 2002, the plaintiff was cleared to return to work as a bus operator and *continued working for five years* until July 2007, when she went on disability leave due to an unrelated foot condition. She was terminated after *she refused, without consulting a physician, a transfer* to a sedentary position, and has not worked since.

plaintiff and hence the complaint against it should have been dismissed. Alternatively, HHM argues that the improper jury charges entitle them to a new trial on all issues.

While I agree with the majority that the court erred as to its charges to the jury, for the reasons set forth below, I would vacate the judgment and dismiss the complaint as against HHM on the ground that HHM had no duty to the plaintiff. Rather, the City was entirely liable for the condition of the road. Consequently, in my view there is no need to determine "relative culpability" pursuant to CPLR 1601, and thus no reason to remand for a new trial.

The threshold question, whether HHM had a duty to the plaintiff, is a question of law for the court, not a question of fact for the jury. (*Sheila C. v Povich*, 11 AD3d 120, 125 [1st Dept 2004].) The plaintiff argues that HHM's duty to her arises either from HHM's contract with the City to "protect finished and unfinished work against any . . . injury," or from HHM's negligent creation of a defect in the road. The first argument, that "[HHM] is responsible whether they created [the alleged hole] or did not [because] they assume[d] that responsibility" from the City pursuant to the contract, is without merit.

It is well established that a contract such as the one between HHM and the City generally does not create a duty owed by the contractor to the general public. (*Moch Co. v Rensselaer Water Co.*, 247 NY 160, 168 [1928].) As Chief Judge Cardozo explained in *Moch*, the duty that the contractor owes is "to the city and not to its inhabitants" who benefit from the contract only incidentally. (*Id.* at 165.) Thus, HHM's duty under the contract was to the City, not the plaintiff. Nor did the contract relieve the City of its duty to the plaintiff. A municipality's duty to maintain the roads and highways in a reasonably safe condition is nondelegable. (*See Stiuso v City of New York*, 87 NY2d 889, 891 [1995].)

However, the plaintiff, having failed to bring a claim against the City, also attempts to foist tort liability onto HHM by arguing that by leaving a hole in the street HHM "launched a force or instrument of harm." (*See Espinal v Melville Snow Contrs.*, 98 NY2d 136, 140, 142 [2002] [a defendant contractor "launche(s) a force or instrument of harm" when it "negligently creates or exacerbates a dangerous condition" (internal quotation marks omitted)]; *see also Church v Callanan Indus.*, 99 NY2d 104, 111 [2002] ["failing to exercise due care in the execution of (a) contract" may "launch( ) a force or instrument of harm" (internal quotation marks omitted)].) In my opinion, this argument fares no better.

As a matter of law, a contractor cannot be liable in tort for failing to exercise due care in the execution of a contract where it complies with the contract specifications. (*See e.g Davies v Ferentini*, 79 AD3d 528, 529-530 [1st Dept 2010] [because the defendant contractor's work was performed pursuant to the DOT's specifications, defendant fulfilled its contract and did not launch a force or instrument of harm]; *see also e.g. Luby v Rotterdam Sq., L.P.*, 47 AD3d 1053, 1055 [3d Dept 2008]; *Gee v City of New York*, 304 AD2d 615, 616 [2d Dept 2003].) Here, it is undisputed that HHM's work was inspected and approved by the City's engineering consultants as compliant with the contract specifications. The resident engineer on the Atlantic Avenue project testified that he approved the backfilling and temporary resurfacing done by HHM on October 1 and again on October 26, 2001.

The majority's argument—that the City's acceptance of the work was not "final" as defined by the contract because there was no issuance of a certificate of completion signed by the Commissioner—elevates form over substance. It is undisputed that after HHM stopped work on the roadway on October 26, 2001, the City inspected HHM's work, approved it, and *opened Atlantic Avenue to traffic*, thereby implicitly authorizing the road as safe for use. In my view, this was a de facto final acceptance as to the work that HHM had completed so far. Thus, the condition of the roadway was the City's responsibility until HHM resumed work after the holiday break. To subject HHM to liability for a purported defect arising from work approved by the City one month prior to the accident would create the very type of "indefinitely extended" duty "to an indefinite number of potential beneficiaries" that the Court of Appeals rejected more than seven decades ago in *Moch.* (247 NY at 168.)