Plaintiff was injured when the tire of a bus she was driving rolled into a large hole in a roadway. Defendant HHM Associates, Inc. had contracted with nonparty City of New York to replace sewer mains along a stretch of roadway that included the site of the accident. HHM’s project entailed excavating and restoring the roadway. According to the City’s consulting engineer, the roadway had been restored with temporary asphalt when the accident occurred. Plaintiffs theory at trial was that HHM left the hole in the roadway while performing its work. At the charge conference, HHM requested a charge based on the City’s nondelegable duty to keep its streets in a reasonably safe condition (see e.g. Friedman v State of New York, 67 NY2d 271, 283 [1986]). HHM also submitted a proposed verdict sheet that contained interrogatories as to whether the City was negligent and, if so, whether such negligence was a substantial factor in causing plaintiff’s injuries. The proposed verdict sheet also called for an apportionment of culpability among HHM, the City and plaintiff. The trial court declined to instruct the jury *527 on the City’s possible liability and did not reference the City on the verdict sheet that was submitted to the jury. The jury awarded damages for past and future pain and suffering (defined as noneconomic loss under CPLR 1600), lost earnings and medical expenses. In so doing, the jury found HHM and plaintiff to be 77% and 23% culpable, respectively. We reverse.
CPLR 1601 (1) provides that a joint tortfeasor whose culpability is 50% or less is not jointly liable for all of a plaintiffs noneconomic loss but is severally liable for its proportionate share (see Sommer v Federal Signal Corp., 79 NY2d 540, 554 [1992]). Under the statute, the trier of fact must consider the relative culpable conduct of a nonparty in apportioning culpability unless the plaintiff proves that with due diligence she was unable to obtain jurisdiction over the nonparty (see Duffy v County of Chautauqua, 225 AD2d 261, 266 [4th Dept 1996], lv dismissed in part and denied in part 89 NY2d 980 [1997]). Plaintiff failed to make such a showing. Accordingly, a new trial as set forth above is required to determine the extent of the City’s relative culpable conduct, if any.
We also note that plaintiff testified that the hole had been in the roadway for at least a month prior to the accident. Unquestionably, a party’s constructive notice of a dangerous condition that was left unremedied constitutes evidence of negligence (see Gordon v American Museum of Natural History, 67 NY2d 836, 837 [1986]). We disagree with the argument in Justice Tom’s dissent that the record is devoid of evidence of negligence on the City’s part. There was evidence of constructive notice on the part of the City. The City is under a nondelegable duty to maintain its streets in a reasonably safe condition (Thompson v City of New York, 78 NY2d 682, 684 [1991]). That duty remains fixed even if a dangerous street condition that causes injury is created by an independent contractor such as HHM (Lopes v Rostad, 45 NY2d 617, 623 [1978]). In light of the City’s nondelegable duty, we are not persuaded by plaintiffs argument that there was no evidence of a failure by the City to exercise reasonable care.
Where pertinent, CPLR 1602 (2) (iv) provides as follows: “The limitations set forth in this article shall. . . not be construed to impair, alter, limit, modify, enlarge, abrogate or restrict . . . any liability arising by reason of a non-delegable duty . ...” In Rangolan v County of Nassau (96 NY2d 42, 45 [2001]), the Court of Appeals explained that CPLR 1602 (2) (iv), quoted above, does not preclude apportionment when a defendant’s liability arises from a nondelegable duty; the subdivision is a savings provision and not an exception to apportionment under
*528 CPLR article 16 (see Frank v Meadowlakes Dev. Corp., 6 NY3d 687, 693 [2006]). We, therefore, respectfully disagree with Justice Tom’s dissent insofar as it posits that “the statutory language [of article 16] clearly indicates that the legislature did not intend apportionment to be predicated on obligations that are . . . nondelegable.” To be sure, the Rangolan Court held that “a municipality that delegates a duty for which the municipality is legally responsible, such as the maintenance of its roads, to an independent contractor remains vicariously liable for the contractor’s negligence, and cannot rely on CPLR 1601 (1) to apportion liability between itself and its contractor” (Rangolan, 96 NY2d at 47 [emphasis added], citing Faragiano v Town of Concord, 96 NY2d 776 [2001]). However, the fundamental difference here is that HHM, like any other agent, is not responsible to third parties for the tortious acts of its principal, the City (see Rusyniak v Gensini, 629 F Supp 2d 203, 222 and n 41 [ND NY 2009]; Dorkin v American Express Co., 74 Misc 2d 673, 674 [Sup Ct, Albany County 1973], affd 43 AD2d 877 [3d Dept 1974]). Rangolan stands for the proposition that CPLR 1602 (2) (iv) does not preclude a party, such as HHM, from seeking apportionment between itself “and other tortfeasors for whose liability [it] is not answerable” (96 NY2d at 47 [internal quotation marks omitted]).
We also disagree with Justice Tom’s dissent to the extent it is based on the apparent premise that a municipality’s breach of its nondelegable duty cannot give rise to culpable conduct within the meaning of CPLR 1601. Within the analogous context of CPLR article 14-A, the Court of Appeals has defined “culpable conduct” as “conduct which, for whatever reason, the law deems blameworthy” (Arbegast v Board of Educ. of S. New Berlin Cent. School, 65 NY2d 161, 168 [1985]). The term embraces “any breach of legal duty or fault by the defendant, including but not limited to negligence in any degree, breach of warranty, strict liability and violation of a statutory duty” (Lippes v Atlantic Bank of N.Y., 69 AD2d 127, 137 [1st Dept 1979] [internal quotation marks and emphasis omitted]).
Also, although discussed in Justice Tom’s dissent, the prior written notice law (Administrative Code of City of NY § 7-201 [c] [2]) does not bear upon HHM’s right to have a jury determine the City’s relative culpability under CPLR 1601. By its own terms, the prior written notice law is limited in application to actions “maintained against the city” (id.). The prior written notice law is therefore inapplicable here because the City is not a party to this action. Prior written notice provisions are always strictly construed because they are enacted in derogation of *529 common law (Poirier v City of Schenectady, 85 NY2d 310, 313 [1995]).
Citing Diaz v Vasques (17 AD3d 134 [1st Dept 2005], lv denied sub nom. Boggio v Yonkers Contr. Co., 5 NY3d 706 [2005]), HHM also argues that it had no duty to plaintiff because its work was performed pursuant to the City’s contract specifications and approved by its engineers (see generally Espinal v Melville Snow Contrs., 98 NY2d 136 [2002]). Here, HHM relies on the consulting engineer’s testimony that he approved the work as being performed according to specifications. The contract, however, defined “final acceptance” as the issuance of a certificate of completion and acceptance signed by the Commissioner of the Department of Design and Construction. The record contains no evidence that such a certificate was issued. Moreover, the contract further provided that the engineer’s inspection and approval of the work did not relieve HHM of its obligation to perform according to the contract. Therefore, HHM did not conclusively establish that it performed its work pursuant to the contract specifications. We also respectfully disagree with Justice Catterson’s dissent insofar as it suggests that holding HHM to the “final acceptance” provisions of its contract “elevates form over substance.” On the contrary, we look to the actual words of a contract so that form does not swallow substance (see Sutton v East Riv. Sav. Bank, 55 NY2d 550, 555 [1982]). In this case, HHM should not be heard to invoke its contract as a shelter against liability while, at the same time, seeking to avoid the plain meaning of its provisions.
The court properly permitted plaintiffs vocational economic analyst to testify about plaintiff’s lost fringe benefits even though her union’s collective bargaining agreement was not in evidence. An expert’s opinion must generally be based on facts in the record or personally known to the witness (Hambsch v New York City Tr. Auth., 63 NY2d 723, 725 [1984]). Nevertheless, an expert may rely on out-of-court material that is “accepted in the profession as reliable in forming a professional opinion” (id. at 726 [internal quotation marks omitted]). HHM’s objections to the expert’s opinion were refuted by the fact that its own vocational expert also based his opinion, in part, on the collective bargaining agreement (see e.g. Greene v Xerox Corp., 244 AD2d 877, 878 [4th Dept 1997], lv denied 91 NY2d 809 [1998]).
We have considered HHM’s remaining contentions and find them unavailing. Concur — DeGrasse, Richter and ManzanetDaniels, JJ.